COURT OF APPEALS OF VIRGINIA


Present:  Judges Frank, Humphreys and Senior Judge Hodges
Argued at Chesapeake, Virginia


WILLIAM P. ROBINSON, JR.
                                              OPINION BY
v.    Record No. 3389-01-1            JUDGE ROBERT P. FRANK
                                              JULY 8, 2003
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF NORTHAMPTON COUNTY
                         Glen A. Tyler, Judge

             William P. Robinson, Jr. (George A.
             Anderson, Jr.; Robinson, Neeley, and
             Anderson, on brief), for appellant.

             Virginia B. Theisen, Assistant Attorney
             General (Jerry W. Kilgore, Attorney General;
             John H. McLees, Senior Assistant Attorney
             General, on brief), for appellee.


     William P. Robinson, Jr. (appellant) was convicted in a

bench trial of common law criminal contempt of court.  On

appeal, he contends the trial court erred in (1) finding the

evidence was sufficient to convict and (2) imposing punishment

that exceeded the limitations of Code §§ 18.2-456(1) and

18.2-457.  For the reasons stated, we affirm the judgment of the

trial court.

                           BACKGROUND

     The facts are uncontroverted.  Appellant, a licensed

attorney, had three criminal matters set for hearings in

Northampton County Circuit Court on July 23, 2001.  Two of the

matters involved entry of guilty pleas, and the other involved a sentencing. On July 19, 2001, Wendell Donald Brown, appellant's "paralegal investigator," called Bruce D. Jones, Jr., the Northampton County Commonwealth's Attorney, to ask that the three cases set for July 23rd be continued. Brown explained appellant had jury trials in other jurisdictions that would run over their estimated time and continue onto July 23rd. Although Brown knew appellant had several cases scheduled in Virginia Beach Circuit Court for the morning of July 24th, he suggested July 24th as an appropriate day for the Northampton cases. He did not tell Jones about the Virginia Beach cases.

Jones told Brown that he had to appear in general district court on July 24th and that the circuit court judge would not be in Northampton County that day. He told Brown to contact the circuit court judge's secretary.

Brown talked to the judge's secretary, and the cases were rescheduled for July 24th at 11:00 a.m. Brown informed the Commonwealth and appellant of the change. Appellant then asked Brown to send letters to the Virginia Beach prosecutors requesting continuances for five cases set for July 24th in Virginia Beach.[1]  The letters were sent on July 20th.  Neither

---

[1] In actuality, six cases were set for July 24th in Virginia Beach, but one was not recorded properly in appellant's computerized docketing system. The error was discovered some time in the morning on July 24th.

Brown nor appellant actually spoke to the Virginia Beach prosecutors prior to the 24th to confirm the continuances.

During his testimony, appellant acknowledged knowing that the Northampton cases were set for 11:00 a.m. on July 24th. He acknowledged that, when he suggested the July 24 day to Northampton, he knew he had cases set for that day in the Virginia Beach Circuit Court. While appellant did not verify that the Virginia Beach cases could be continued prior to setting the Northampton cases, he explained he had no reason to believe the Virginia Beach cases would not be continued.

The jury trial that appellant expected to run until July 23rd was settled prior to its conclusion. As a result, appellant did not have court on July 23rd. However, he did not contact the Virginia Beach prosecutors or courts to ask about the continuances.

On the morning of July 24th, appellant went to Virginia Beach to confirm his requested continuances and get new dates for those cases. He arrived at approximately 9:30 a.m. His cases were in several different courtrooms with different judges. Appellant characterized his predicament: "It took longer to confirm dates, continuances, make the motions before the judges because there were cases all over the place." Additionally, he had a hearing on a probation violation, requesting that a defendant be evaluated for a diversion program.

Despite the length of the Virginia Beach transactions, appellant never notified the Northampton court that he was "running late." He had the opportunity to contact his office and ask them to call the court, but he "didn't really think of it." Appellant testified he had anticipated resolving his cases in Virginia Beach in no more than "a half-hour or so."[2]

At 11:00 a.m. on July 24th, Jones and all three of appellant's clients were present in the Northampton court. The judge was waiting in chambers, and court personnel were present, but appellant did not appear. Eventually, the judge recessed for lunch. After lunch, Jones was told that the judge would not return to court that day. Sometime after 1:00 p.m., appellant called Jones from his cell phone, saying that he was just coming off the Bay Bridge Tunnel and he understood the judge had left the bench for the day.

The trial court issued a contempt show cause for appellant. A plenary hearing was held on November 7, 2001. At the outset of the hearing, the court explained that appellant was charged with indirect contempt, rather than direct contempt, and that the hearing was a plenary hearing rather than a summary hearing.[3]

---

[2] The trial court indicated that the trip from the Virginia Beach Circuit Court to the Northampton County courthouse takes "at least an hour."

[3] The conviction order recited the trial court found "Code § 18.2-456.1" (sic) inapplicable.

- 4 -

The trial court found appellant guilty of criminal contempt of court, reiterating that he is not bound by the constraints of Code § 18.2-456(1) because this contempt was indirect and not disposed of in a summary fashion. The trial court explained, "[T]here were cases scheduled intentionally and willfully at the same time [in two separate jurisdictions]." The trial court further commented on appellant's failure to contact the Northampton court about his tardiness. The trial court fined appellant $1,000 and sentenced him to thirty days in jail, suspended upon certain terms and conditions. The court also prohibited appellant from taking any new cases within the jurisdiction of Northampton County for one year.[4]

## ANALYSIS

### A. Sufficiency

First, appellant contends the evidence was insufficient to convict him because he had no intent to obstruct or interfere with the administration of justice. He asserts, to the contrary, he acted in the best interest of his clients and the administration of justice. We disagree.

On review of an insufficiency claim, "'this Court does not substitute its judgment for that of the trier of fact.'" Jett v. Commonwealth, 29 Va. App. 190, 194, 510 S.E.2d 747, 748 (1999) (en banc) (quoting Canipe v. Commonwealth, 25 Va. App. 629, 644, 491 S.E.2d 747, 754 (1997)). "Where the court's authority to

---

[4] This restriction was lifted on July 29, 2002, after the trial court was convinced appellant had remedied the causes for his previous behavior.

punish for contempt is exercised by a judgment rendered, its finding is presumed correct and will not be reversed unless plainly wrong or without evidence to support it."  Brown v. Commonwealth, 26 Va. App. 758, 762, 497 S.E.2d 147, 149 (1998). "We must view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom."  Baugh v. Commonwealth, 14 Va. App. 368, 374, 417 S.E.2d 891, 895 (1992).

"'Contempt is defined as an act in disrespect of the court or its processes, or which obstructs the administration of justice, or tends to bring the court into disrepute.'  4A Michie's Jurisprudence Contempt § 2 (Repl. Vol. 1983)."  Carter v. Commonwealth, 2 Va. App. 392, 396, 345 S.E.2d 5, 7 (1986). The Supreme Court defined constructive contempt almost a century ago:

> In the 9 Cyc. of Law and Procedure, p. 6, a constructive contempt is stated to be "an act done not in the presence of the court, but at a distance, which tends to belittle, to degrade, or to obstruct, interrupt, prevent, or embarrass the administration of justice."
>
> Barton, in Vol. 2 (2 Ed.), p. 774, of his Law Practice, is to the same effect. "Contempt of court is a disobedience to the court, or an opposing or despising the authority, justice or dignity thereof."

Burdett v. Commonwealth, 103 Va. 838, 843, 48 S.E. 878, 880 (1904).  Additionally, "'[i]t has been stated that intent is a necessary element in criminal contempt, and that no one can be

punished for a criminal contempt unless the evidence makes it clear that he intended to commit it.'  17 Am. Jur. 2d Contempt § 8 (1964) (emphasis added)."  Carter, 2 Va. App. at 397, 345 S.E.2d at 8.

Our decision in Brown controls here.  Brown, an attorney, set a civil jury trial in the Circuit Court for the City of Norfolk while setting four cases in the Virginia Beach Juvenile and Domestic Relations District Court for the same day.  26  Va. App. at 761, 497 S.E.2d at 149.  He then appeared approximately forty minutes late for the cases in Norfolk.  Id.  We held:

> [W]here an attorney schedules multiple matters in different jurisdictions at the same time, his assertions of good faith "[do] not negate the reasonable inference that he recklessly or willfully failed [timely] to advise the court of his conflicting schedule."  See Murphy v. Maryland, 416 A.2d 748, 756 n.11 (Md. Ct. Spec. App. 1980).  Here, appellant's actions in scheduling multiple matters for trial in different courts in different jurisdictions at the same time support the trial court's finding of "[m]isbehavior in the presence of the court, or so near thereto as to obstruct or interrupt the administration of justice."

Id. at 762, 497 S.E.2d at 149.

Here, appellant had a number of criminal matters set in the Virginia Beach Circuit Court on July 24, 2001.  He then set three criminal matters in the Northampton County Circuit Court for the same day.[5]  While appellant thereafter requested that the Virginia Beach Commonwealth's Attorney continue those matters,

---

[5] Appellant does not contend Brown, who actually set the matters with the court, acted without his knowledge or authorization.

the Virginia Beach cases were not continued prior to July 24. Appellant appeared in Virginia Beach at 9:30 a.m. to have the matters continued and to obtain new trial dates. He also had to resolve a probation violation matter that he had omitted from his docket. Appellant, running late in Virginia Beach, failed to advise the Northampton County Circuit Court of his tardiness, although he had the means to contact the court.[6] He apparently did not attempt to contact anyone in Northampton about his tardiness until more than two hours after his cases were scheduled to begin.

The evidence was sufficient to convict appellant of contempt. As in Brown, appellant knowingly created a conflict in his schedule, setting cases on the same morning in two separate jurisdictions that were some distance apart. He then failed to appear on time for his cases in Northampton County. His excuse that the five or six Virginia Beach cases took longer to resolve than the half an hour he had expected does not preclude a finding of contempt of court.

### B. Sentencing for Common Law Contempt

Appellant contends Code §§ 18.2-456(1) and 18.2-457 limit the penalty for contempt to ten days in jail and a maximum fine of $250. He argues his sentence was inappropriate as it

---

[6] We do not suggest that, if appellant had called the Northampton County court to advise them of his tardiness, we would have reached a different conclusion.

exceeded this limit.  While we agree the sentence was more than allowed by these statutes, we find the statutes did not apply in this case.

The Supreme Court in <u>Holt v. Commonwealth</u> explained:

> The power of the court to punish for contempt can no longer be challenged.  Such power is inherent in the nature and constitution of a court.  It is a power not derived from any statute, but arising from the exercise of all other powers.  Without such power the administration of the law would be in continual danger of being thwarted by the lawless.  The power to fine and imprison for contempt is incident to every court of record.
>
>     *      *      *      *      *      *      *
>
> The ingrained principles above recorded had their origin in the genesis of the court itself, having been settled long before the founding of this country.  The moment the courts of the United States were called into existence and invested with jurisdiction over any subject, they became possessed of the power to protect themselves and the dignity and authority of the court.  <u>Ex parte Robinson</u>, (Ark.) 86 U.S. (19 Wall.) 505, 22 L. Ed. 205.

205 Va. 332, 336-37, 136 S.E.2d 809, 813 (1964), <u>rev'd on other grounds</u>, 381 U.S. 131 (1965).

Contempt proceedings are categorized as either direct or indirect.

> "[T]he substantial difference between a direct and a constructive [indirect] contempt is one of procedure.  Where the contempt is committed in the presence of the court, it is competent for it to proceed upon its own knowledge of the facts, and to punish the offender without further proof,

> and without issue or trial in any form."
> (Citations omitted).
>
> "In dealing with indirect contempts -- that
> is, such as are committed not in the
> presence of the court -- the offender must
> be brought before the court by a rule or
> some other sufficient process; but the power
> of the court to punish is the same in both
> cases." [Burdett's Case,] 103 Va. [838,]
> 845-46, 48 S.E. [878,] 880-81 [(1904)].

Davis v. Commonwealth, 219 Va. 395, 398, 247 S.E.2d 681, 682 (1978). Indirect or constructive contempt charges, therefore, are not brought summarily,[7] but must proceed under a more formal procedure than an immediate adjudication by the court. While Code §§ 18.2-426 and 18.2-457 limit the court's power to sentence in direct or summary contempt proceedings, these statutes do not limit the court's power where it exercises its inherent common law power to punish for indirect contempt.

Here, a show cause was issued for appellant. At the onset of the contempt hearing, the trial court announced appellant was charged with indirect contempt and indicated, "This hearing is not a summary hearing, it's a plenary hearing, that is to say a full hearing . . . ." The judge further indicated he was not constrained by Code § 18.2-456. Appellant's counsel responded, "And so based on [the court's comment,] I would conclude that there is a difference in that the statute doesn't control."

---

[7] Code §§ 18.2-456 and 18.2-457 limit the use of summary proceedings and the sentences imposed during these proceedings to the examples listed in the statute. It does not address plenary hearings for contempt conducted on the basis of a show cause or other more formal attachment.

During final argument, both the Commonwealth's Attorney and appellant's counsel argued the statute.  Nevertheless, the trial court consistently held the statute did not apply and sentenced appellant beyond the limits of Code § 18.2-456.  The conviction order also indicated the statute did not apply to these proceedings.

The trial court did not summarily find appellant in contempt.  Instead, process was issued against appellant for indirect contempt.  Appellant was given an opportunity to obtain counsel and to prepare his defense.  The court held an evidentiary hearing.  As the proceeding was not for summary contempt, the trial court was not bound by the constraints of Code § 18.2-456 and acted accordingly.

_____

We affirm the conviction and sentence for common law contempt.

Affirmed.