COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Kelsey and Petty
Argued at Alexandria, Virginia

GREGORY ALLEN HARRINGTON

MEMORANDUM OPINION[*] BY
v.      Record No. 0522-09-4                    JUDGE D. ARTHUR KELSEY
APRIL 27, 2010

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
Jeffrey W. Parker, Judge

(Steven Shareff, on brief), for appellant. Appellant
submitting on brief.

(William C. Mims, Attorney General; Donald E. Jeffrey, III,
Senior Assistant Attorney General, on brief), for appellee.
Appellee submitting on brief.


Gregory Allen Harrington appeals a summary contempt order on the ground that it

violated his due process rights. We agree and reverse the summary contempt order.

I.

On November 14, 2008, Judge Jeffrey W. Parker entered a *sua sponte* order finding

Harrington in summary contempt of court. Accompanying the order, Judge Parker filed an

affidavit explaining the factual basis for the contempt finding. The affidavit alleged:

- About two weeks earlier, Judge Parker "was advised by his wife" that
  Harrington had called her place of employment, the Piedmont Dispute
  Resolution Center (PDRC), complaining her job as a mediator
  "presented a conflict of interest" with Judge Parker's role as a circuit
  court judge and "demanding that Mrs. Parker explain the situation."

- The day after the PDRC call, Judge Parker found a letter from
  Harrington on the windshield of his personal vehicle as he left a
  barbershop. The unsigned letter blamed the judge for the fact that
  Harrington's son was "now involved with drugs and alcohol." The
  letter also claimed the judge had a "relationship" with an attorney who
  represented Harrington's ex-wife during a previous child custody case.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

- The sheriff's department "advised" Judge Parker that Harrington intended to picket his home on Thanksgiving and Christmas "with no apparent intention other than to harass [him] at his residence, and any guests that might be invited there."

- A few days later, at the entrance of the circuit court building, Harrington "confronted" another judge who had presided over Harrington's most recent court proceeding. "Upon information and belief," Harrington spit on the windshield of this judge's vehicle. On the same day, Harrington was seen "picketing" and chanting "Impeach Judge Parker" while wearing a "sandwich board" declaring the circuit court was "corrupt and discriminatory."

- On November 12, at about 5:30 p.m., Judge Parker left the courthouse building and walked to his vehicle. As he did so, Judge Parker "encountered" Harrington in the parking lot. Harrington "in a loud voice repeated 'Congratulations Judge on destroying a family,' while clapping his hands, and behaving in a threatening and an aggressive manner." He continued making these statements "while he walked behind the courthouse building."

The affidavit alleged these events reflected "an escalating pattern of harassment, contempt and aggression" toward Judge Parker "occurring purely as a result of his judicial capacity and role in judicial proceedings long since passed, which involved Gregory Harrington."

Based upon the affidavit, Judge Parker entered an order finding Harrington in summary contempt of court under Code § 18.2-456. The order found, among other things, Harrington had engaged in "an escalating pattern of conduct" unrelated to any "legitimate or proper purpose that could be asserted before the Circuit Court of Fauquier County."

Harrington filed a motion to set aside the order arguing the court deprived him of his due process rights by finding him in summary contempt and thereby depriving him of the right to notice, the opportunity to present evidence and cross-examine witnesses, the assistance of counsel, and the right to a jury trial.[1]  Harrington's counsel proffered that Harrington, if allowed

---

[1] On appeal, Harrington contends Judge Parker's failure to recuse himself provides an alternative basis for reversing the summary contempt order. Compare Taylor v. Hayes, 418 U.S.

to testify, would provide a very different account of the encounter in the courthouse parking lot on November 12. Judge Parker denied the motion to set aside. Harrington's factual proffer, Judge Parker stated, was "absolutely untrue." "Coupled with the other events that were occurring at or about that time," Judge Parker held, the incident in the courthouse parking lot warranted the summary contempt order.

## II.

While the inherent judicial power over summary contempts has been "exercised as early as the annals of our law extend," it has been limited to contemptuous conduct "committed in the face of the court" for which there is no need for "further proof or examination." 4 William Blackstone, Commentaries on the Laws of England 286 (1769). In contrast, matters "that arise at a distance, and of which the court cannot have so perfect a knowledge, unless by the confession of the party or the testimony of others" do not implicate a court's summary contempt powers. Id.

Incorporating these historic limitations, due process principles permit summary contempt power to be exercised only for "charges of misconduct, in *open court*, in the *presence of the judge*, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent 'demoralization of the court's authority' before the public." Scialdone v. Commonwealth, 279 Va. 422, 443, 689 S.E.2d 716, 728 (2010) (quoting In re Oliver, 333 U.S. 257, 275 (1948) (emphasis added)); cf. Pounders v. Watson, 521 U.S. 982, 988 (1997) ("We have stressed the importance of confining summary contempt orders to misconduct

---

488, 501 (1974), with Ungar v. Sarafite, 376 U.S. 575, 583-84 (1964). "Given our holding," however, "any discussion on that point would conflict with two principles of judicial self-restraint: our reluctance to issue what amounts to an 'advisory opinion' on an inessential subject, and our corresponding desire to decide the case 'on the best and narrowest ground available.'" Cooper v. Commonwealth, 54 Va. App. 558, 566, 680 S.E.2d 361, 365 (2009) (citation omitted); see also Kirby v. Commonwealth, 50 Va. App. 691, 702 n.2, 653 S.E.2d 600, 603 n.2 (2007) (citations omitted). We thus decline to address this issue.

occurring in court."); Cooke v. United States, 267 U.S. 517, 536 (1925) ("When the contempt is not in open court, however, there is no such right or reason in dispensing with the necessity of charges and the opportunity of the accused to present his defense by witnesses and argument.").[2]

In this case, Judge Parker's affidavit, order, and remarks from the bench all confirm he held Harrington in summary contempt for an escalating pattern of incidents occurring over several days. All of the events occurred outside open court, and several of them took place outside the judge's presence. The affidavit suggests Judge Parker received evidence from his wife, the sheriff's department, another judge, and perhaps others. Under such circumstances, the issuance of a summary contempt order violated due process principles. For this reason, we reverse and vacate the order.[3]

Reversed.

---

[2] A trial court retains the common law authority to employ plenary procedures even for contempts that, by statute, may be punished summarily. Robinson v. Commonwealth, 41 Va. App. 137, 145-46, 583 S.E.2d 60, 64 (2003). The statutory "constraints" of Code §§ 18.2-456 and 18.2-457 do not apply to plenary contempt proceedings. Id. at 146, 583 S.E.2d at 64.

[3] Because Harrington does not challenge the sufficiency of the evidence on appeal, we do not address this issue. See Commonwealth v. Brown, 279 Va. 235, 241-42, 687 S.E.2d 742, 744-45 (2010) (holding the Court of Appeals cannot reverse a criminal conviction on a ground not asserted on appeal by the criminal defendant).