COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Huff and Chaney
Argued at Norfolk, Virginia


MELANIE JONES BALLARD

                                  MEMORANDUM OPINION[*] BY
v.       Record No. 0895-22-1                JUDGE GLEN A. HUFF
                                        JULY 25, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Edward W. Hanson, Jr., Judge Designate

Katherine D. Currin (Morris, Crawford & Currin, P.C., on brief), for
appellant.

Lauren C. Campbell, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Melanie Jones Ballard ("appellant") was convicted in the Circuit Court for the City of

Chesapeake (the "trial court") on three counts of violating a court order, pursuant to Code

§ 18.2-456, after failing to deliver the minor child for the father's scheduled parenting time. On

appeal, appellant claims the trial court erred by: (1) considering the reason why father was not

present for pick-up and drop-off of the child, (2) failing to correctly interpret its custody and

visitation orders, and (3) finding the evidence sufficient to prove that appellant violated the order.

For the following reasons, this Court affirms the trial court's judgment.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

The trial court initially entered a custody and visitation order on January 29, 2020 (the "January order"), ordering appellant and Dorrie Leslie ("father") to share joint legal custody of the child. Specifically, appellant was given primary physical custody and father had "parenting time" every other week from Wednesday until Monday morning. The January order included additional periods of "parenting time" for father during the child's summer vacation and school holidays.

Paragraph 3 of the order provided that "[i]n the event the parties are unable to conduct drop-offs and pick-ups and/or provide transportation for the child, a parties' [sic] parent or other responsible family member may do so." Appellant and father were further directed to "use the Our Family Wizard application exclusively for communication" between one another, starting the date the order was issued. Appellant raised objections "as to the extent of [f]ather's parenting time, commencement date of [f]ather's parenting [time], allowing paternal grandparents to provide transportation[,] and failure to include a first right of refusal in the event that either party is unavailable to exercise his/her parenting time."

In the January order, the trial court transferred the case to the Chesapeake Juvenile and Domestic Relations District Court (the "JDR court") for purposes of modifying and enforcing the order. On April 21, 2020, the JDR court modified the January order by awarding primary physical custody to father. That modified order (the "April order") further stated that "[f]ather will pick up child Friday evening at 5pm and drop child off on Tuesday morning at 8am. [Appellant] will have Tuesday through Friday[, and the o]ther details of [the] prior order, not inconsistent with this order, will remain in effect."

---

[1] "In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)).

By subsequent order dated August 25, 2020 (the "August order"), the JDR court clarified the April order by adding a provision "that the father is not to be subjected to [appellant]'s interference. [Appellant] shall have one (1) telephone call with the child either Saturday or Sunday. [Appellant] is not to be near father's home or family unless to exchange the child."

In December 2020, appellant was charged with three counts of violating the January order. The warrants alleged that, on November 6, 13, and 20, appellant violated the provision of the order allowing father's parent or other responsible family member to conduct pick-up on father's behalf. On July 9, 2021, the JDR court convicted appellant of violating the January order and she appealed those convictions to the trial court.

At a hearing in the trial court, appellant argued that the April order allowed only father—not the paternal grandparents—to pick up and drop off the child. She cited the plain wording of the April order that "[f]ather will pick up child Friday evening at 5pm and drop child off on Tuesday morning at 8am." That language, she contended, contradicted "the paragraph [in the January order] indicating that [father] could send a third party because it says [f]ather will do those things." Thus, when father did not personally appear for pick-up on those three dates in November 2020, appellant refused to turn the child over for father's parenting time.

She further asserted that the failure of the JDR court to use the term "parenting time" in its April order indicated its intent that father was now required to conduct pick-ups and drop-offs for visitation. Appellant concluded that the "poorly written" April order effectively eliminated the provision in the January order allowing father's "parent or other responsible family member" to "conduct drop-offs and pick-ups."

During the hearing, the trial court noted the messages between appellant and father mentioned that father was working long shifts at his job. The court then asked if that was why father was not able to pick the child up on November 6, 13, and 20, but appellant objected, saying,

"[W]hy he's not there is irrelevant if there's a court order that says that he must pick up and drop off." The trial court disagreed and explained it did not "read [the order] that way."

The trial court admitted messages between appellant and father in the Our Family Wizard application. In a conversation before the scheduled November 6 drop-off, appellant told father: "When you can pick him up on a Friday then he will go. Until then he stays here. Not doing this anymore." When father told appellant that his aunt would be present for the exchange on November 6, appellant responded, "When will you be there? The custody papers said in the 'event' you or me are not there not every single Friday. You have been doing this [sic] January. Now if you out there at 5:00 pm [the child] will be there. When you have time for him." Father responded: "The custody paper clearly states that my time is my time with [the child] and that I can send whom I choose to pick up [the child]. My aunt will be there to pickup [the child] at 5pm." Appellant responded: "This is the last time I am going to say this when you make time to come get [the child] he will be ready. It's been going on to [sic] long. I'm out there every single week." The messages then indicate that appellant never showed up for the exchange on November 6, 2020.

The following week, on November 13, 2020, father attempted to have his aunt and parents pick up the child, to which appellant responded:

> Why can't you pick up [the child]? You do this every week and I'm tired of it. [The child] will be ready when you're ready to pick him up just like last Friday. Visitation is for you not your parents and Aunt. It says send them in the "event" you can't pick him up. It seems to me you have been having an event since January.

At 5:13 p.m., father inquired if appellant was on her way to meet his family, to which she responded: "[The child] is asleep and as I stated in the earlier email. He will be ready when you make time to come get him." On November 20, 2020, appellant again refused to meet father's family to exchange the child.

The trial court ultimately found that the April order's modification did not eliminate the provision in the January order that permitted father's parent or another responsible family member to conduct pick-ups and drop-offs. Consequently, the trial court convicted appellant on three counts of violating the court's order. This appeal followed.

ANALYSIS

I.

Appellant first asserts that the trial court erred by inquiring as to why father was not present for pick-up. She contends that father's reason for not picking up the child was irrelevant. Appellant therefore challenges the admissibility of that evidence, but such decisions "lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion." *Michels v. Commonwealth*, 47 Va. App. 461, 465 (2006) (quoting *Breeden v. Commonwealth*, 43 Va. App. 169, 184 (2004)).

Evidence must be relevant to be admissible, and "[e]vidence is relevant if it has 'any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence.'" *Jones v. Commonwealth*, 71 Va. App. 70, 88 (2019) (quoting Va. R. Evid. 2:401); *see also* Va. R. Evid. 2:402. "The scope of relevant evidence in Virginia is quite broad, as '[e]very fact, however remote or insignificant, that tends to establish the probability or improbability of a fact in issue is relevant.'" *Commonwealth v. Proffitt*, 292 Va. 626, 634 (2016) (alteration in original) (quoting *Va. Elec. & Power Co. v. Dungee*, 258 Va. 235, 260 (1999)). In addition to being relevant, the evidence "must also be material." *Id.* (quoting *Brugh v. Jones*, 265 Va. 136, 139 (2003)). And materiality means that the evidence "tend[s] to prove a matter that is properly at issue in the case." *Id.* at 635 (quoting *Brugh*, 265 Va. at 139).

Appellant maintains that any reason why father was not personally present for the custody exchange was not relevant to the issue of whether appellant violated the court's April order because

it strictly imposed on the father alone the duty to pick up the child for parenting time. She therefore contends that the trial court abused its discretion in considering father's reasons for not complying with the terms of the order.

But the trial court's January order included a provision that either party could send a parent or other family member in their stead "[i]n the event the parties are unable to conduct drop-offs and pick-ups." Accordingly, *why* father could not attend the three exchanges in November 2020 was relevant to the question of whether appellant's refusal to exchange the child was a contemptuous act. Indeed, as the trial court noted, appellant mentioned father's work schedule in a November 13 message in the Our Family Wizard application, thus indicating her understanding that father worked long hours.

The reason father was not able to personally pick the child up on Fridays for his parenting time was relevant and material to the court's analysis of whether appellant violated the court's order. Therefore, the trial court did not err.

## II.

Related to her first argument, appellant also asserts that the trial court erred "by failing to use the plain meaning of words in its interpretation of court orders."

"It is well established in this Commonwealth that a circuit court speaks only through its written orders." *Roe v. Commonwealth*, 271 Va. 453, 457 (2006). "Another well-established principle in our jurisprudence is that circuit courts have the authority to interpret their own orders." *Id.* Thus, "[w]hen construing a lower court's order, a reviewing court should give deference to the interpretation adopted by the lower court." *Smoot v. Commonwealth*, 37 Va. App. 495, 500 (2002) (quoting *Fredericksburg Constr. v. J.W. Wyne Excavating*, 260 Va. 137, 144 (2000)). Nevertheless, the trial court's interpretation of its order "must be reasonable." *Roe*, 271 Va. at 458. "We apply an

abuse of discretion standard in determining whether the circuit court's interpretation of its order is reasonable." *Id.*

In this case, the trial court concluded that the January and April orders, read together, included the provision that either party could send a parent or other responsible family member to exchange the child in the event either party could not do so. Indeed, the April order merely amended the initial custody award to give father primary physical custody, which included rescheduling his parenting time. It did not change any other provisions of the January order; in fact, it explicitly stated that all other provisions of the January order continued to apply unless they were inconsistent with the new April order.

The mere fact that the April order was worded to say that *father* would pick up the child on Fridays at 5:00 p.m. was not, in and of itself, inconsistent with the earlier provision allowing *either party* to send a family member on their behalf if they could not personally appear for their scheduled exchange. That provision in Paragraph 3 of the January order applied to both parties equally, not just to father. Thus, the specific reference to father in the April order was a clarifying point regarding his rights, after the change in primary physical custody, rather than an abolition of the provision in the January order allowing both parties to send a parent or other responsible family member for pick-up and drop-off.

That intent is also evidenced by the added provision in the August order—as a clarification to the April order—that "[appellant] is not to be near father's home *or family* unless *to exchange the child.*" (Emphases added). By that plain wording, the August order recognized father's continuing ability to send a parent or other responsible family member to exchange the child in the event he could not do so. Appellant even accused father of abusing that privilege when she messaged him on November 6, 2020, stating "[t]he custody papers said in the 'event' you or me are not there[—]not

- 7 -

every single Friday." Her own words indicate that she understood the court's order continued to allow family members to assist in the exchange of the child.

Reasonably construed, the orders allowed father to send a "responsible family member" as a proxy to pick up the child. Because the trial court's interpretation of the custody orders at issue was reasonable, that interpretation does not constitute an abuse of discretion.

III.

Finally, appellant asserts that the trial court erred in finding the evidence sufficient to prove beyond a reasonable doubt that she violated the court order.

"Where the court's authority to punish for contempt is exercised by a judgment rendered, its finding is presumed correct and will not be reversed unless plainly wrong or without evidence to support it." *Abdo v. Commonwealth*, 64 Va. App. 468, 474-75 (2015) (quoting *Brown v. Commonwealth*, 26 Va. App. 758, 762 (1998)). "In considering a challenge to 'the sufficiency of the evidence . . . , [this Court] review[s] the evidence in the light most favorable to the Commonwealth, according it the benefit of all reasonable inferences fairly deducible therefrom.'" *Id.* at 475 (quoting *Singleton v. Commonwealth*, 278 Va. 542, 548 (2009)).

"All courts in this Commonwealth have the power to impose penalties for contemptuous conduct." *Singleton*, 278 Va. at 548 (quoting *Gilman v. Commonwealth*, 275 Va. 222, 227 (2008)). "Contempt is defined as an act in disrespect of the court or its processes, or which obstructs the administration of justice, or tends to bring the court into disrepute." *Robinson v. Commonwealth*, 41 Va. App. 137, 142 (2003) (quoting *Carter v. Commonwealth*, 2 Va. App. 392, 396 (1986)).[2] "Any

---

[2] "'[F]or a proceeding in contempt to lie,' there 'must be an express command or prohibition which has been violated.'" *DRHI, Inc. v. Hanback*, 288 Va. 249, 255 (2014) (quoting *Petrosinelli v. PETA*, 273 Va. 700, 707 (2007)). "The courts and judges may issue attachments for contempt, and punish them summarily, only in" response to "[d]isobedience or resistance of an officer of the court, juror, witness, or other person to any lawful process, judgment, decree, or order of the court." Code § 18.2-456.

- 8 -

act which is calculated to embarrass, hinder, or obstruct the court in the administration of justice is contempt." *Carter*, 2 Va. App. at 396. "Additionally, '[i]t has been stated that *intent* is a necessary element in criminal contempt, and that no one can be punished for a criminal contempt unless the evidence makes it clear that he intended to commit it.'" *Robinson*, 41 Va. App. at 143 (quoting *Carter*, 2 Va. App. at 397). "Thus, in criminal contempt proceedings, it is essential to consider whether the accused intended to undermine [the court's] authority." *Singleton*, 278 Va. at 549. The evidence also must prove that the accused was "acting in bad faith or [in] willful disobedience of [the court's] order." *Zedan v. Westheim*, 60 Va. App. 556, 574-75 (2012) (alterations in original) (quoting *Alexander v. Alexander*, 12 Va. App. 691, 696 (1991)).

The trial court was not plainly wrong in finding that appellant violated a court order when she refused to exchange the child with father's family members on three separate occasions in November 2020. As explained above, the April order detailing when father must pick up or drop off the child did not supersede the January order's provision allowing the parents to send a parent or responsible family member for exchange of the child "in the event" the parents themselves could not. Instead, those provisions can reasonably be read harmoniously. Because the January order's provision remained in full force and effect, appellant's refusal to exchange the child with a valid proxy family member violated the court's custody order.

The messages appellant sent to father in November 2020 through Our Family Wizard demonstrated that she knew of her obligation to exchange the child for the scheduled periods of visitation and that she was aware of the existing provision allowing for a grandparent or other responsible family member to participate in the exchange. Indeed, appellant's messages do not indicate that she believed such provision was no longer valid after the April order was issued; rather, they imply that she believed the provision was an exception to be used sparingly. Her

statements display her displeasure with father for repeatedly sending a family member to exchange the child without any "event" justifying that substitution.

However, even if appellant had a genuine question concerning application of the provision in the January order governing exchanges, she had the responsibility to return to court to resolve the matter rather than defy the court's order. Furthermore, the fact that appellant objected to that provision when the January order was first entered shows she did not agree with it and therefore supports an inference that her subsequent refusal to exchange the child with father's family members was a willful violation of the order made in bad faith.

Accordingly, the trial court was not plainly wrong in concluding that the evidence was sufficient to support appellant's convictions. When appellant refused to exchange the child for visitation on November 6, 13, and 20 of 2020, she intentionally, deliberately, willfully, and in bad faith violated the court's order, thereby subjecting herself to punishment for contempt.

CONCLUSION

For the foregoing reasons, this Court finds that the trial court's interpretation of the custody orders was reasonable. Therefore, the trial court did not abuse its discretion in admitting evidence as to why father did not appear for a few exchanges of the child or in finding the evidence sufficient to hold appellant in contempt for violating the court's order. This Court affirms the trial court's judgment.

*Affirmed.*