COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judge AtLee and Senior Judge Humphreys
Argued at Williamsburg, Virginia

COREY SALMON

MEMORANDUM OPINION* BY
v.      Record No. 1276-24-1      CHIEF JUDGE MARLA GRAFF DECKER
JANUARY 20, 2026

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Johnny E. Morrison, Judge

Althea L. Mease, Public Defender, for appellant.

Timothy J. Huffstutter, Assistant Attorney General (Jason S.
Miyares,[1] Attorney General, on brief), for appellee.


This case originates from actions in the presence of the trial court. During his jury trial

for maliciously shooting into an occupied vehicle, the trial court discovered that Corey Lamar

Salmon continued using his smart watch after being told to stop by the courtroom deputy and

that he was recording the trial on his cell phone without court approval. Salmon admitted to

recording the proceedings, despite earlier admonitions by the court about the use of electronics.

The court declared a mistrial, citing concerns for the jurors and the witnesses, and convicted

Salmon of contempt of court. Salmon was sentenced to five days in jail, all suspended, and fined

$25. On appeal, he argues that the trial court erred in finding the evidence sufficient to convict

him of direct contempt. Finding no error, we affirm the trial court's judgment.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

BACKGROUND[2]

Salmon was on trial for maliciously shooting into an occupied vehicle. He elected to be tried by a jury, and the panel was selected. Following the testimony of the prosecution's last witness, the court sent the jury from the courtroom. The judge stated he noticed that the courtroom deputy had "talked to th[e] defendant a couple [of] times" during the case. Deputy Ruiz advised the court that he saw Salmon "scrolling through his smart watch" twice, which was "the equivalent of using his cell phone." According to the deputy, he told Salmon not to use his smart watch after the first observation. But after that, Ruiz saw Salmon scrolling again. The deputy explained that when he confronted Salmon the second time, Salmon said he was "texting his lawyer." He then clarified that he "was showing a message to [his] lawyer" and claimed it did not constitute texting. At that point, the judge admonished Salmon that he was "not to use any kind of equipment in th[e] courtroom" and that his smart watch was the equivalent of his phone. Salmon acknowledged that he understood, and the judge directed him to give his cell phone and smart watch to Deputy Ruiz.

After this exchange, the Commonwealth rested its case, and Salmon moved to strike the evidence, which the trial court denied. Salmon presented evidence and testified in his defense. After the defense rested, the judge called on the deputy again. The deputy relayed that, as Salmon was testifying, his cell phone lit up and it "appear[ed] . . . Salmon ha[d] been [audio] recording th[e] trial for 1 hour 46 minutes and 53 seconds." When asked, Salmon admitted that he knew his phone was recording and added that he had not told his attorneys. The court

[2] On appeal, this Court recites the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we discard any evidence that conflicts with the Commonwealth's evidence, "and regard as true all the credible evidence favorable to the Commonwealth and all . . . inferences" that can be fairly drawn from that evidence. *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018) (per curiam)).

explained that no one was permitted to "record anything in this courtroom, even the press. They have to get permission of the [c]ourt." Salmon said that he was "ignorant" and did not know that he needed to ask for permission to record the proceedings. He argued that no signs prohibited recording.

The trial court expressed its concern for the jurors and the witnesses who had testified. It admonished Salmon and pointed out that there were signs posted throughout the building "dealing with" recordings and photographs. Ultimately, the court declared a mistrial, mainly out of concern for the safety of "the jury and [the] witnesses" and because the court did not know Salmon's motive behind recording. It held Salmon in contempt, issued a show cause order with a 15-day return, and confiscated his watch and cell phone.

At the show cause hearing, Salmon presented evidence in his defense. He introduced photos of signs that were posted at the two main entrances to the courthouse. The signs listed items banned "[b]y court order." Cameras and video equipment and certain non-electronic items were listed as prohibited. Salmon testified that he did not know why he was there and did not "know what the fuck [wa]s going on." According to Salmon, he did not know of a reason he was not permitted to record the trial, he heard no announcements telling him not to record, and he saw no signs against recording. Salmon again explained his thought process about recording the proceedings and noted he wanted his own record of the trial because he did not trust anyone and did not understand legal terms. He denied any intention to disrespect the court or use the information he gained about the jurors. On cross-examination, Salmon was asked if he remembered the deputy "telling [him] to turn off [his] devices when [Deputy Ruiz] caught [him] on [his] watch." Salmon responded affirmatively and further agreed that he did not follow the deputy's directive.

Salmon argued he did not intend to disrespect the court and his actions did not directly "disregard" "any rule, policy, posted sign, [or] announcement" that "got to him." The trial court reiterated, as it did the day of the jury trial, that Salmon had been told twice by the deputy not to use his smart watch yet kept using it and then was found to be recording. It held Salmon in contempt of court under Code § 18.2-456(A)(1), sentenced him to five days in jail, all suspended, and imposed a $25 fine.

ANALYSIS

Salmon challenges the sufficiency of the evidence to support his conviction. He contends that based on the evidence his actions did not amount to the requisite willful intent. He also argues that there is "limited information on the record" clearly identifying which facts the court relied on in support of its decision.

An appellate court will "review the exercise of a court's contempt power under an abuse of discretion standard." *Orndoff v. Commonwealth*, ___ Va. ___, ___ (Sept. 25, 2025) (plurality opinion) (quoting *Petrosinelli v. People for the Ethical Treatment of Animals, Inc.*, 273 Va. 700, 706 (2007)); *see also Sapp v. Commonwealth*, 263 Va. 415, 425 (2002) (noting that the "use of contempt powers is clearly subject to the discretion of the trial court"). "This bell-shaped curve of reasonability" underpinning appellate review for an abuse of discretion "rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." *Commonwealth v. Barney*, 302 Va. 84, 94 (2023) (quoting *Sauder v. Ferguson*, 289 Va. 449, 459 (2015)).

A trial court's exercise of its discretion to find someone in contempt differs from the question of whether the record supports such a conviction. In these matters where the sufficiency of the evidence is challenged, appellate courts "will reverse a judgment of the circuit court only upon a showing that it is plainly wrong or without evidence to support it." *Singleton*

- 4 -

*v. Commonwealth*, 278 Va. 542, 548 (2009).  A reviewing court simply will "not substitute its judgment for that of the trier of fact" on matters of sufficiency of the evidence.  *Becker v. Commonwealth*, 64 Va. App. 481, 490 (2015) (quoting *Robinson v. Commonwealth*, 41 Va. App. 137, 142 (2003)).  "[I]t is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion."  *Barney*, 302 Va. at 97 (second and third alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).  Instead, the question on appeal is "whether *any* rational trier of fact could have found the [challenged] elements of the crime beyond a reasonable doubt."  *Cappe v. Commonwealth*, 304 Va. 86, 87 (2025) (per curiam) (emphasis added) (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)).  We apply this well-established standard of review when considering Salmon's challenge to the sufficiency of the evidence of his conviction for contempt.

"Virginia courts have long recognized that the 'power to punish for contempt is inherent in, and as ancient as, courts themselves.'"  *Parham v. Commonwealth*, 60 Va. App. 450, 455 (2012) (quoting *Carter v. Commonwealth*, 2 Va. App. 392, 395 (1986)).  This power is necessary based "on the basic need to 'preserve the confidence and respect of the people.'"  *Id.* at 455-56 (quoting *Carter*, 2 Va. App. at 395); *see also Gilman v. Commonwealth*, 275 Va. 222, 227 (2008) (stating that contempt powers are "exercised to preserve the power of the court and to vindicate the court's dignity").  Courts should use this power "[t]o preserve order in the court room for the proper conduct of business."  *Cooke v. United States*, 267 U.S. 517, 534 (1925).  And carrying out this directive requires that "court[s] . . . act instantly to suppress disturbance[s] or violence or physical obstruction[s] or disrespect to the court when occurring in open court."  *Id.*  The law makes clear the unique nature of contempt crimes.

- 5 -

Based on these principles, "[i]t is [considered] elementary that any act which is calculated to embarrass, hinder, or obstruct the court in the administration of justice is contempt." *Parham*, 60 Va. App. at 456 (first alteration in original) (quoting *Potts v. Commonwealth*, 184 Va. 855, 859 (1946)). Stated differently, "[c]ontempt under Virginia law is '"an act in disrespect of the court or its processes, or which obstructs the administration of justice, or tends to bring the court into disrepute."'" *Abdo v. Commonwealth*, 64 Va. App. 468, 476 (2015) (quoting *Robinson*, 41 Va. App. at 142). It "'is, itself, a frame of mind' that consists in 'an unwillingness to recognize the authority and dignity of the court.'" *Becker*, 64 Va. App. at 490 (quoting *Abdo*, 64 Va. App. at 477). Code § 18.2-456(A)(1) provides courts the statutory authority to punish such "[m]isbehavior in the presence of the court, or so near thereto as to obstruct or interrupt the administration of justice."[3]

"A 'direct contempt is one committed in the presence of the court.'"[4] *Bell v. Commonwealth*, 81 Va. App. 616, 625 (2024) (quoting *Gilman*, 275 Va. at 227). This species of contempt allows "the judge [to be] his own best witness of what occurred." *Scialdone v. Commonwealth*, 279 Va. 422, 444 (2010) (quoting *United States v. Marshall*, 451 F.2d 372, 374 (9th Cir. 1971)). And because the act "is committed in the presence of the court, it is competent for it to proceed upon its own knowledge of the facts, 'and to punish the offender without further

---

[3] The term "misbehavior" is not defined because "[i]t is assumed that reasonable people understand the line between good and bad behavior, particularly when exhibited in open court in the presence of a judge." *Parham*, 60 Va. App. at 459.

[4] "[T]here are two distinct types of contempt, direct and indirect." *Scialdone v. Commonwealth*, 279 Va. 422, 442 (2010). "Indirect contempt" occurs outside "'the presence of the court.'" *Id.* at 443 (quoting *Burdett v. Commonwealth*, 103 Va. 838, 846 (1904)).

proof, and without issue or trial in any form.'"[5] *Robinson*, 41 Va. App. at 145 (quoting *Burdett v. Commonwealth*, 103 Va. 838, 845-46 (1904)).  This offense is also referred to as summary contempt.  *See Amos v. Commonwealth*, 61 Va. App. 730, 742 (2013) (en banc) (discussing "the exercise of the summary or direct contempt power"), *aff'd*, 287 Va. 301 (2014).  "[S]ummary vindication" is "justif[ied]" in these circumstances because "the affront to the court's dignity is more widely observed," and its authority needs to be preserved.  *Parham*, 60 Va. App. at 457-58 (2012) (quoting *Pounders v. Watson*, 521 U.S. 982, 988 (1997) (per curiam)).

Salmon challenges the proof of his intent.  Important to our analysis is that "[w]hether the required intent exists is generally a question for the trier of fact."  *Becker*, 64 Va. App. at 491 (quoting *Nobles v. Commonwealth*, 218 Va. 548, 551 (1977)).  The general definition of intent is well understood.  "Intent is the purpose formed in a person's mind and may, like any other fact, be shown by circumstances, including the 'words or conduct' of the alleged offender."  *Fary v. Commonwealth*, 77 Va. App. 331, 342 (2023) (en banc) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228-29 (2018)), *aff'd per curiam*, 303 Va. 1 (2024); *see also Abdo*, 64 Va. App. at 475.

"[W]illfulness or recklessness satisfies the intent element necessary for a finding of criminal contempt."  *Becker*, 64 Va. App. at 491 (quoting *Abdo*, 64 Va. App. at 477).  As such, the offender does not have to have a specific intent "to disrupt court proceedings."  *Abdo*, 64 Va. App. at 478.  This Court has stated that a willful intent in the context of a criminal statute "generally means an act done with a bad purpose; without justifiable excuse; stubbornly,

---

[5] "[T]he substantial difference between a direct and [indirect] contempt is one of procedure."  *Parham*, 60 Va. App. at 457 (second alteration in original) (quoting *Burdett*, 103 Va. at 845).  Since indirect contempt occurs outside the court's presence, "due process 'requires that the accused should be advised of the charges and have a reasonable opportunity to meet them by way of defense or explanation.'"  *Scialdone*, 279 Va. at 444 (quoting *Cooke*, 267 U.S. at 537).  Even though Salmon's actions occurred in the presence of the trial court, he was still provided a hearing and was allowed to present additional evidence.  As his counsel appropriately acknowledged at oral argument in this Court, Salmon was given more "process" than he was entitled to under the law.

obstinately, perversely[.]" *Id.* at 477 (alteration in original) (quoting *Barrett v. Commonwealth*, 268 Va. 170, 183 (2004)). "The term 'willful act' imports knowledge and consciousness that injury will result from the act done," and the act "must be intended or . . . involve a reckless disregard for the rights of another and will probably result in an injury." *Id.* (quoting *Barrett*, 268 Va. at 183).

On this record, there is sufficient evidence that Salmon acted willfully or recklessly in the use of his smart watch and cell phone during his jury trial. Signs at the entrances to the court clearly prohibited the use of cameras and video equipment, which at minimum informed Salmon there were limitations on the use of electronic devices. More importantly, he was told twice not to use his smart watch while in the courtroom, and he acknowledged that he did not turn off his devices as instructed by the deputy. The trial court had to disrupt the trial and remove the jury to find out why the deputy had to speak to Salmon. *See Amos*, 61 Va. App. at 742 (discussing that direct contempt "is reserved for '"exceptional circumstances"' . . . [like] disrupting a hearing or obstructing court proceedings'" (quoting *Vaughn v. City of Flint*, 752 F.2d 1160, 1167 (6th Cir. 1985))). The court then directed that Salmon was not allowed to "use any kind of equipment in th[e] courtroom." Salmon said he understood and apologized. The trial court instructed the deputy to take his smart watch and phone away from him.

Despite the clear admonitions and the confiscation of the items, Salmon knowingly allowed the audio recording of the proceeding to continue and did not inform the court until after the deputy noticed that the cell phone was recording the trial and had been doing so for almost two hours. *See Robinson*, 41 Va. App. at 144 (considering an attorney's failure to alert the court "of his tardiness" in the analysis affirming the sufficiency of the evidence). Despite having been told the use of any equipment was prohibited, Salmon claimed that he did not realize that

recording would be an issue and that he had no ill intent motivating his actions.[6] *See id.* at 143 (holding that "assertions of good faith 'd[id] not negate the reasonable inference'" supporting a finding of the requisite intent for contempt (quoting *Murphy v. Maryland*, 416 A.2d 748, 756 n.11 (Md. Ct. Spec. App. 1980))).

In the end, the trial judge, who had the benefits of being present for the acts and hearing the evidence, reasonably concluded that Salmon's repeated actions were clearly done "without justifiable excuse; stubbornly, obstinately, [or] perversely[.]" *Barrett*, 268 Va. at 183 (second alteration in original) (quoting *United States v. Murdock*, 290 U.S. 389, 394 (1933)). And they showed he had "an unwillingness to recognize the authority and dignity of the court." *Becker*, 64 Va. App. at 490 (quoting *Abdo*, 64 Va. App. at 477).

This record supports the trial court's factual finding that Salmon willfully or recklessly disrupted the court's proceedings, and his assertions of ignorance "[do] not negate the reasonable inference" he had such intent. *Robinson*, 41 Va. App. at 143 (alteration in original) (quoting *Murphy*, 416 A.2d at 756 n.11).

Finally, Salmon cites the proposition that to support a conviction for direct contempt, "[t]he record . . . must contain more than the bare *conclusion* that the defendant's conduct was" contemptuous. *Carter*, 2 Va. App. at 397. He suggests that the court did not articulate the clear basis for its contempt finding. We disagree.

A trial court finding someone in contempt, especially direct contempt, "*should recite the facts upon which*" it "*base[s] its final conclusion.*" *Id.* (quoting 17 Am. Jur. 2d *Contempt* § 100 (1964)). Still, even without this recitation, a conviction for contempt will be upheld as long as the "record . . . contains the evidence to support the conclusions of the trial court." *Id.* at 399.

---

[6] "The factfinder need not believe an accused's explanation and . . . may infer that the accused is lying to conceal his guilt." *Abdo*, 64 Va. App. at 479 n.5 (quoting *Phan v. Commonwealth*, 258 Va. 506, 511 (1999)).

Here, a review of the record shows the trial court clearly identified the contemptuous conduct. On the day of the jury trial, the court stated that Salmon had been told twice not to use his smart watch. The deputy spoke with him once, and Salmon "didn't listen" and then did the same thing again. After that, the deputy discovered that he had been audio recording the trial on his phone, which caused the court great concern. These facts supported the court's initial finding of summary contempt. At the conclusion of the show-cause hearing, the trial court affirmed its contempt finding. In doing so, it referred back to the statements it made on the day of the aborted jury trial in support of its decision. Even still, it considered in its ruling Salmon's testimony at the show-cause hearing and the foul language he had used. The court reiterated that Salmon had been warned by the deputy not to use his smart watch but "proceeded to keep doing it" along with recording the trial. The record supports the trial court's factual findings and contains "more than . . . bare *conclusion*[s]" of Salmon's offending conduct by providing several instances where he acted in a manner that disrupted the court proceedings that ultimately required ending in a mistrial. *See id.*

We hold, viewing the evidence in the light most favorable to the Commonwealth, that a rational fact finder could find that Salmon willfully or recklessly disrupted court proceedings. As a result, his actions constituted "[m]isbehavi[ng] in the presence of the court" in such a manner "as to obstruct or interrupt the administration of justice." *See* Code § 18.2-456(A)(1). Accordingly, the evidence was sufficient to convict Salmon of contempt of court.

CONCLUSION

For these reasons, the trial court did not abuse its discretion in holding Salmon in direct contempt, and there was sufficient evidence on the record that he willfully or recklessly

disrupted court proceedings by continuing to use his electronic equipment within the courtroom.

We therefore affirm the judgment of the trial court.

*Affirmed.*