COURT OF APPEALS OF VIRGINIA

Present:  Judges Kelsey, Beales and Senior Judge Annunziata
Argued at Richmond, Virginia

PRISCILLA SHERRIE PARHAM

                                                                OPINION BY
v.        Record No. 1528-11-2                    JUDGE D. ARTHUR KELSEY
                                                                JULY 31, 2012

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Walter W. Stout, III, Judge

Catherine French, Senior Appellate Coordinator (Virginia
Indigent Defense Commission, on briefs), for appellant.

Katherine Quinlan Adelfio, Assistant Attorney General
(Kenneth T. Cuccinelli, II, Attorney General, on brief),
for appellee.

Priscilla Sherrie Parham appeals her contempt conviction on two grounds.  First, she

claims the evidence was insufficient as a matter of law.  Second, she contends the circuit court

violated her due process rights by considering a certificate filed by the juvenile and domestic

relations district court pursuant to Code § 18.2-459.  We disagree with both assertions and

affirm.

I.

Parham appeared *pro se* at a hearing in a child custody case pending in the Richmond

Juvenile and Domestic Relations District Court (the JDR court).  During the hearing, Parham

was found guilty of summary contempt.  No court reporter was present to record the hearing.

Pursuant to Code § 18.2-459, the JDR court filed a "certificate of the conviction and the

particular circumstances of the offense."

The certificate explained that "Parham appeared on March 23, 2011 in a contested

custody case."  App. at 4.  At the end of the hearing, the JDR judge "advised" the parties she was

"granting sole legal custody" to the father.  Id.  As the court clerk prepared the order, a court deputy handed a child support summons to Parham.  In response, "Parham balled the paper up." Id.  When the judge asked Parham "what she had just done," Parham replied "she didn't need the papers."  Id.  "At that point," the judge stated, "I took a brief recess."  Id.  After the recess, the judge repeated her ruling granting sole legal custody to the child's father.  The court's custody orders were then handed to Parham.  As before, "Parham proceeded to ball up these orders."  Id. The judge found her in summary contempt.

Parham appealed the summary contempt finding to the circuit court.  Parham argued the circuit court could not consider the JDR court's certificate under Code § 18.2-459 because doing so violated her due process right to confront the witness against her — the JDR judge.  She also contended her actions could not "be considered either insulting to the judge or misbehavior or resistance or disobeying an order of the Court."  Id. at 23.  After the circuit court overruled her objections, Parham took the stand in her own defense.

Parham testified she balled up the "first piece of paper" (the summons) and conceded: "So I could take the contempt of court."  Id. at 26.  She admitted she was "upset" at the court's ruling.  Id. at 25.  Balling up the summons, she agreed, was "contemptuous" on her part.  Id. at 30.  Immediately after balling up the summons, Parham recalled, the JDR judge breathed "aahhhh" into the microphone on the bench and announced the court would be in recess.  Id. at 26.

Parham denied balling up the second set of papers (the custody orders), claiming the JDR judge made up that part of the story simply out of spite.  Parham asserted that the only thing she did with this set of papers was to "fold it up" in open court.  Id. at 30.  On cross-examination, Parham acknowledged she had been previously convicted of perjury.

The circuit court affirmed the JDR court's finding of summary contempt. The circuit court construed the JDR court's recess as an effort to "calm down" the situation before issuing its written orders to Parham. Id. at 24. The circuit court also found that Parham's actions in open court were purposefully "insulting," id., giving rise to the JDR court's contempt authority to maintain the "dignity" of the proceeding, id. at 31.

## II.

On appeal, Parham challenges the sufficiency of the evidence as well as the admissibility of the JDR court's certificate. We find no merit in either contention.

## A.

Virginia courts have long recognized that the "power to punish for contempt is inherent in, and as ancient as, courts themselves." Carter v. Commonwealth, 2 Va. App. 392, 395, 345 S.E.2d 5, 7 (1986) (citations omitted). This "inherent" power is conferred upon Virginia courts "by the very act of their creation. It is a trust confided and a duty imposed upon us by the sovereign people which we cannot surrender or suffer to be impaired without being recreant to our duty." Carter's Case, 96 Va. 791, 809, 32 S.E. 780, 783 (1899).[1] The underlying rationale rests not only on the need to enforce judicial orders but also on the basic need to "preserve the confidence and respect of the people without which the rights of the people cannot be maintained and enforced." Carter, 2 Va. App. at 395, 345 S.E.2d at 7 (citations omitted).

Under Virginia law, "[i]t is elementary that any act which is calculated to embarrass, hinder, or obstruct the court in the administration of justice is contempt." Potts v. Commonwealth, 184 Va. 855, 859, 36 S.E.2d 529, 530 (1946). This includes any "act in disrespect of the court or its processes, or which obstructs the administration of justice, or tends

---

[1] See also Yoder v. Commonwealth, 107 Va. 823, 829-30, 57 S.E. 581, 583 (1907) (reaffirming Carter's Case in light of later revisions to the Virginia Constitution).

to bring the court into disrepute." Robinson v. Commonwealth, 41 Va. App. 137, 142-43, 583 S.E.2d 60, 63 (2003) (quoting Carter, 2 Va. App. at 396, 345 S.E.2d at 7). As Sir William Blackstone put it, contempt includes anything that demonstrates "a gross want of that regard and respect, which, when once courts of justice are deprived of, their authority (so necessary for the good order of the kingdom) is entirely lost among the people." Burdett v. Commonwealth, 103 Va. 838, 843, 48 S.E. 878, 880 (1904) (quoting 4 William Blackstone, Commentaries on the Laws of England *285-86 (1769)). When "vindicating the dignity and authority of the court," a judge discharges a "solemn duty" and is not "engaged in a personal and private controversy." Branch v. Branch, 144 Va. 244, 252, 132 S.E. 303, 306 (1926) (quoting Carter's Case, 96 Va. at 812, 32 S.E. at 784).[2]

Under the common law, acts of contempt "are either direct, which openly insult or resist the powers of the courts, or the persons of the judges who preside there; or else are consequential [indirect], which (without such gross insolence or direct opposition) plainly tend to create an universal disregard of their authority." Blackstone, *supra*, at *283-84. Although the common law established the power to punish contempt, Carter's Case, 96 Va. at 806-07, 32 S.E. at 781-82, constitutional and statutory law set the procedural standards governing the imposition of a contempt conviction. In this respect, "the substantial difference between a direct and [indirect] contempt is one of procedure." Burdett, 103 Va. at 845, 48 S.E. at 880. "Although the 'power of the court to punish is the same,' there are two distinct types of contempt, direct and indirect." Scialdone v. Commonwealth, 279 Va. 422, 442, 689 S.E.2d 716, 727 (2010) (citation omitted).

---

[2] Examples of contemptuous behavior under Virginia law go as far back as the General Court of the Colony, which exercised its common law powers against a litigant for "saying that she had gotten as little justice in court as she would have in hell with the devil sitting as judge" as well as against other litigants "calling on God to damn the justices" and "saying that the judges never did any good." United States v. Barnett, 376 U.S. 681, 723 n.13 (1964) (citing Arthur P. Scott, Criminal Law in Colonial Virginia 172-73 (1930)); see also 1 Philip Alexander Bruce, Institutional History of Virginia in the Seventeenth Century 511 (1964) (discussing various "affronts to the court" punished as summary contempt).

Direct contempt usually arises "'in the face of the court' as by rude and contumelious behavior; by obstinacy, perverseness, or prevarication; by breach of the peace, or any willful disturbance whatever." Blackstone, *supra*, at \*285; see also John B. Minor, Exposition of the Law of Crimes and Punishments § IV(ii)(v.), at 147 (1894) (direct contempt includes "rude and contumelious behavior towards the court or judge"). In such circumstances, "immediate punishment is essential to prevent 'demoralization of the court's authority' before the public." In re Oliver, 333 U.S. 257, 275 (1948) (citation omitted).

The governing "form of procedure" for summary contempt "dispenses with any further proof or examination and a formal hearing." Higginbotham v. Commonwealth, 206 Va. 291, 294, 142 S.E.2d 746, 749 (1965). Since ancient times, if "the contempt be committed in the face of the court, the offender may be instantly apprehended and imprisoned, at the discretion of the judges, without any farther proof or examination." Blackstone, *supra*, at \*286.[3] "Where misconduct occurs in open court, the affront to the court's dignity is more widely observed, justifying summary vindication." Pounders v. Watson, 521 U.S. 982, 988 (1997) (*per curiam*).

In indirect contempt cases, which Blackstone called "matters that arise at a distance, and of which the court cannot have so perfect a knowledge," Blackstone, *supra*, at \*286, courts must provide the full panoply of constitutional rights: notice of the charge, right to counsel, presumption of innocence, as well as the opportunity to present evidence and to cross-examine

---

[3] In summary contempt cases, Virginia law "does not require the trial judge to adjudicate a contempt committed in his presence at the very instant of the alleged misbehavior or disobedience of the court's ruling. He *may* do so, under § 18.1-292 [now Code § 18.2-456], but he is not required to." Higginbotham, 206 Va. at 295, 142 S.E.2d at 749 (emphasis in original). "An examination and analysis of the reported cases which have dealt with the effect of delay in adjudication of contempt committed in the presence of the court reveal, without exception, that the court's power to punish a contemnor is not lost by a short delay during the course of the trial." Id. at 295, 142 S.E.2d at 749-50.

adverse witnesses. See Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 798-99 (1987); Scialdone, 279 Va. at 443-44, 689 S.E.2d at 728.[4]

In 1831, the Virginia General Assembly codified the common law categories of direct contempt. See 1830-31 Va. Acts ch. 11; United States v. Barnett, 376 U.S. 681, 722-24 (1964). This statute, "in sanctioning the power of the courts to punish, as contempts, the '*acts*' therein enumerated, it is merely declaratory of what the law was before its passage." Carter's Case, 96 Va. at 809, 32 S.E. at 783 (emphasis in original). This statute, as did the common law,

> seems to embrace almost every conceivable form of that offence which can occur in the presence of, or in proximity to, the court, that is to say, under circumstances likely to arouse the passion or prejudice of the judge, and disturb that equanimity essential to calm and wise judicial action.

Id. at 814, 32 S.E. at 784.

Following its predecessors nearly word for word, Code § 18.2-456 lists the major common law categories of direct contempt. The first, "Misbehavior in the presence of the court, or so near thereto as to obstruct or interrupt the administration of justice," Code § 18.2-456(1), has remained unchanged since the original 1831 statute. We have never defined *misbehavior* in any definitive sense — nor could we. See Ronald J. Bacigal, Criminal Offenses & Defenses 408 (2011-12 ed.) (recognizing the term "cannot be fully defined"). It is assumed that reasonable people understand the line between good and bad behavior, particularly when exhibited in open court in the presence of a judge. A probationer, after all, is expected to know what his condition of good behavior means in his suspended sentence. It is not too much to expect the same from litigants appearing before a court.

---

[4] "For 'serious' criminal contempts involving imprisonment of more than six months, these protections include the right to jury trial." United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 826-27 (1994) (citing Bloom v. Illinois, 391 U.S. 194, 198-99 (1968)).

Parham argues she did not misbehave in the presence of the JDR court. She conceded, however, in her testimony in circuit court that she acted with contemptuous intent when she balled up the summons. But she argues that balling up the court's written orders, after the JDR judge's recess, cannot fairly be described as misbehavior. We disagree.

No litigant is expected to cheerfully agree with an adverse judicial ruling. Nor, for that matter, do courts attempt to exercise any control over a disappointed litigant's temptation to harbor disrespect for either the courts or their decisions. But courts do rightly expect a disrespectful litigant to keep her insolent thoughts to herself and to refrain from exhibiting contemptuous behavior in open court. Such petulance breeds defiance of, and disdain for, the judiciary, while accomplishing absolutely nothing toward addressing the alleged error that provoked the litigant to misbehave in the first place.

By balling up the summons and, later, the JDR court's written orders, Parham intended to display — to both the court and all others in the courtroom — her contemptuous disrespect for the JDR court and its decision. Both the JDR court and the circuit court, reviewing the decision, correctly concluded Parham committed misbehavior in the presence of the court, in violation of Code § 18.2-456(1).

Parham also argues that, even if her conduct did qualify as misconduct in open court, it cannot be said to have "obstruct[ed] or interrupt[ed] the administration of justice" as required by Code § 18.2-456(1). We disagree with the assumption underlying Parham's assertion.

Subsection 1 applies to "[m]isbehavior in the presence of the court, or so near thereto as to obstruct or interrupt the administration of justice." Code § 18.2-456(1). Given the syntax and punctuation of this provision, the necessity for showing an actual obstruction or interruption of justice does not apply to misbehavior "in the presence of the court" but only to misbehavior "so near thereto." Id. Misbehavior the court directly sees or hears, therefore, can be dealt with

- 7 -

summarily. Misbehavior outside the court's presence, on the other hand, must somehow obstruct or interrupt justice before it can be, if at all, the subject of summary contempt.

Parham's misbehavior occurred in the presence of the JDR court and, to be sure, was clearly directed at the court. It was unnecessary for the court to find her misbehavior obstructed or interrupted justice before declaring her guilty of summary contempt. Accord In re Savin, 131 U.S. 267, 276 (1889) ("There may be misbehavior in the presence of a court amounting to contempt, that would not, ordinarily, be said to obstruct the administration of justice.").[5]

That said, we do not mean to imply Parham's misbehavior did not obstruct or interrupt justice. The JDR court wisely took a recess in hopes of defusing the situation, creating an interruption in the proceedings for the court and everyone in the courtroom. We need not predicate our ruling on this ground, however, because misbehavior in the presence of the court may be summarily punished under Code § 18.2-456(1) without a showing of an obstruction or interruption of justice.

B.

Parham argues the circuit court violated her due process right to confrontation by admitting into evidence the JDR court's "certificate of the conviction and the particular circumstances of the offense" required by Code § 18.2-459. Again, we disagree.

---

[5] After In re Savin, Congress recodified an analogous federal contempt statute and removed the comma before the phrase "or so near thereto." 62 Stat. ch. 645, at 701 (June 25, 1948) (recodifying statute as 18 U.S.C. § 401). Since then, federal courts have "assumed" the federal contempt statute requires a showing of obstruction in the administration of justice. United States v. Lowery, 733 F.2d 441, 444-45 (7th Cir. 1984). As Judge Posner has explained, "[t]here would be no ambiguity if the draftsmen had placed a comma after 'presence' [of the court] and before 'or so near thereto'" because, had they done so, "history and grammar" would have confined the obstruction caveat to contempts occurring outside the presence of the court. Id.; see also United States v. Oberhellmann, 946 F.2d 50, 52 (7th Cir. 1991) (observing that the "comma" in the earlier contempt statute "fairly dictated" the interpretation that the obstruction element is required only for contempts occurring outside the presence of the court).

- 8 -

A circuit court's review of a district court's certification under Code § 18.2-459 does not violate a defendant's Sixth Amendment right of confrontation. Gilman v. Commonwealth, 275 Va. 222, 228, 657 S.E.2d 474, 476-77 (2008). No litigant in a summary contempt case has a right to cross-examine the judge. After all, the "confrontation" guaranteed by the Sixth Amendment "is confrontation *at trial*," Nelson v. O'Neil, 402 U.S. 622, 626 (1971) (emphasis added), and one found guilty of summary contempt is not entitled to a trial, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 832 (1994).

Parham argues, however, that the Due Process Clause of the Fourteenth Amendment affords a right of confrontation where the Sixth Amendment does not. We do not follow this reasoning. If the Sixth Amendment (which expressly grants a "right to confront") does not afford a right of confrontation to summary contempt defendants, it would be insensible to think the Due Process Clause (which does not even grant a right to trial under these circumstances) would do so. Nor would such a view be consistent with Gilman's holding that traditional summary contempt procedures are consistent with due process principles and need not be constrained by the Sixth Amendment's higher standards. See Gilman, 275 Va. at 228, 657 S.E.2d at 476. For these reasons, the circuit court did not violate Parham's due process rights by admitting into evidence the JDR court's certificate required by Code § 18.2-459.

## III.

Finding the evidence sufficient and the procedures consistent with due process principles, we affirm Parham's conviction of summary contempt under Code § 18.2-456(1).

Affirmed.