# COURT OF APPEALS OF VIRGINIA

## Record No. 1802-24-3

AMY LYNN CHILDRESS

v.

COMMONWEALTH OF VIRGINIA

Present: Judges O'Brien, Lorish and Senior Judge Humphreys
Argued at Lexington, Virginia

Opinion Issued April 7, 2026[*]

### FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
Paul M. Peatross, Judge Designate

Amy Lynn Childress, *pro se*.

(Jason S. Miyares,[1] Attorney General; Ryan Beehler, Assistant Attorney General, on brief), for appellee. Appellee submitting on brief.

### MEMORANDUM OPINION
### PER CURIAM

The circuit court summarily held Amy Lynn Childress in direct contempt for

"[m]isbehavior in the presence of the court" and sentenced her to ten days' incarceration. *See*

Code §§ 18.2-456(A)(1), -457. The contempt conviction was based on Childress's repeated

interruptions during a hearing on her attorney's motion to withdraw as counsel. On appeal,

Childress challenges the contempt conviction, the special prosecutor's designation, and the

court's order allowing her attorney to withdraw. She also contends that the court erroneously

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

denied her "explicit requests for reasonable ADA[2] accommodations." For the following reasons, we affirm.

BACKGROUND

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we discard any evidence that conflicts with the Commonwealth's evidence and regard as true all the credible evidence favorable to the Commonwealth and all inferences that can be fairly drawn therefrom. *Cady*, 300 Va. at 329.

In October 2024, Childress's trial counsel, John Weber, III, moved to withdraw from the representation. As the court identified for the record the individuals present for the hearing, including the Commonwealth's attorney John Alexander, Childress interrupted. The court stated, "I'm not going to let you interrupt" and advised that it would hear from Weber first and then Childress. She responded, "[Y]ou don't have the correct Commonwealth['s] attorney" and objected to Alexander's presence. The court said that it would consider other matters later if appropriate. The court asked Childress to "please sit down and be quiet" while Weber argued his motion to withdraw.

When Weber concluded, the court allowed Childress to respond but "[o]nly [to] that motion." Childress called Weber as a witness. As Weber took the stand, Alexander addressed the court, asking for "clarification" as to whether Childress wanted Weber to remain her trial counsel. Childress interrupted, insisted that Alexander was not a special prosecutor, and asked that everyone be "under oath." The court instructed Childress to stop challenging Alexander's appointment as special prosecutor. As Childress continued to interrupt, contradict, and speak

---

[2] Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213.

over the court, it warned that it would hold her in contempt if she "continue[d] to interrupt and be disrespectful."

During the examination, Childress questioned Weber about matters the court considered irrelevant. The court repeatedly instructed her to tie her questions back to Weber's motion to withdraw. When she could not, the court asked her to "move on." Throughout the hearing, Childress tried to reargue the court's prior rulings and pursue extraneous topics; the court advised her "to respect my ruling, or you are going to be held in contempt." Childress remained argumentative, tried to keep the prosecutor from speaking, interrupted her witness, and failed to heed the court's multiple requests to "move on." The court admonished Childress again, noted its frustration, and stated it did not "want to hold [Childress] in contempt."

Childress told the court that she had post-traumatic stress disorder, anxiety, and ADHD and "need[ed] time and patience." At one point, when the court sustained an objection from the Commonwealth, Childress accused the court of making a ruling before the hearing and commented that the judge and the attorneys were "just nodding with each other now and smiling." She accused the court of not "want[ing] the truth," and she impugned Weber. When Alexander objected to Childress's behavior, she interrupted and spoke over him. The court again warned Childress that if she interrupted, it would hold her in contempt. She stated that she understood.

As her examination of Weber continued, Childress persistently interrupted his answers. When the court told her to let Weber finish speaking, she responded, "You don't let me keep going. It's a yes-or-no [question], and then I can go to the next [question]." The court asked, "Why are you arguing with me?" Childress replied, "It's my witness. I'm trying to get to the next [question]."

The court found Childress in contempt. It sentenced her to ten days in jail but deferred requiring her to serve the time because it wanted "to get the message across" that Childress needed to be respectful and not interrupt Weber. She continued to interrupt. Weber asked to be excused from the witness stand to avoid "be[ing] impugned on some behavior that is a complaint for the bar." The court terminated Weber's testimony and granted his motion to withdraw.

When the court attempted to address other pending motions, it warned Childress that if she "interrupt[ed] . . . one more time, [she would] go serve the ten days." The court asked her repeatedly to sit down and be quiet. But Childress interrupted, and the court ordered her to "serve the ten days now because you interrupted me again." Childress interrupted during the court's pronouncement of the sentence. The court found that Childress's conduct had "waived any right to a [c]ourt-appointed lawyer" because she had "been through five lawyers" and could not "get along with the lawyers." The court denied Childress's motion to reconsider the contempt conviction and sentence.

ANALYSIS

I. The court did not abuse its discretion by summarily holding Childress in direct contempt.

"[W]e review the exercise of a court's contempt power under an abuse of discretion standard." *Orndoff v. Commonwealth*, 304 Va. 419, 430 (2025) (alteration in original) (quoting *Petrosinelli v. People for the Ethical Treatment of Animals, Inc.*, 273 Va. 700, 706 (2007)). "The abuse of discretion standard draws a line—or rather, demarcates a region—between the unsupportable and the merely mistaken, between the legal error . . . that a reviewing court may always correct, and the simple disagreement that, on this standard, it may not." *Jefferson v. Commonwealth*, 298 Va. 1, 10-11, (2019) (alteration in original) (quoting *Reyes v. Commonwealth*, 297 Va. 133, 139 (2019)). "[W]hen evaluating whether the evidence supports a contempt finding, we have held that a court's judgment when exercising its contempt power is

- 4 -

presumed correct and will not be overturned unless it is clearly erroneous or lacks evidentiary support." *Orndoff*, 304 Va. at 430; *see Nusbaum v. Berlin*, 273 Va. 385, 408 (2007).

"It has long been recognized and established that a court is invested with power to punish for contempt." *Scialdone v. Commonwealth*, 279 Va. 422, 442 (2010) (quoting *Higginbotham v. Commonwealth*, 206 Va. 291, 294 (1965)). "[T]here are two distinct types of contempt, direct and indirect." *Id.* A "direct contempt is one committed in the presence of the court," while indirect contempt "occur[s] outside the presence of the court." *Gilman v. Commonwealth*, 275 Va. 222, 227 (2008). In a direct contempt case, "the [court] is [its] own best witness of what occurred" and thus can "proceed upon its own knowledge of the facts[] and . . . punish the offender without further proof, and without issue or trial in any form." *Scialdone*, 279 Va. at 443-44 (first quoting *United States v. Marshall*, 451 F.2d 372, 374 (9th Cir. 1971); and then quoting *Burdett v. Commonwealth*, 103 Va. 838, 846 (1904)).

Code § 18.2-456 lists the "conduct that Virginia courts may summarily punish for direct contempt." *Bell v. Commonwealth*, 81 Va. App. 616, 627 (2024); *see Parham v. Commonwealth*, 60 Va. App. 450, 459 (2012). This conduct includes "[m]isbehavior in the presence of the court." Code § 18.2-456(A)(1). "We have never defined *misbehavior* in any definitive sense—nor could we." *Parham*, 60 Va. App. at 459; *see* Ronald J. Bacigal, *Criminal Offenses & Defenses* 457 (2025-26 ed.) (recognizing the term "cannot be fully defined"). "It is assumed that reasonable people understand the line between good and bad behavior, particularly when exhibited in open court in the presence of a judge." *Parham*, 60 Va. App. at 459. Contemptuous behavior "breeds defiance of, and disdain for, the judiciary, while accomplishing absolutely nothing toward addressing the alleged error that provoked the litigant to misbehave in the first place." *Id.*

Childress claims that her "abrupt" contempt conviction was retaliatory and meant to punish "her for engaging in constitutionally protected advocacy." She contends that the court violated her Fourteenth Amendment due process rights and her First Amendment freedom of speech rights when it held her in contempt for attempting to object on the record. We disagree.

Childress's contempt conviction was not "abrupt." The court warned Childress on multiple occasions to stop interrupting and respect the court's rulings. It repeatedly cautioned her that her failure to follow these instructions would result in contempt proceedings. Although Childress stated she understood, she nevertheless interrupted and ignored numerous court rulings. The record reflects that the court gave Childress considerable leeway to examine Weber on his motion to withdraw. But during this extensive examination, Childress asked questions on irrelevant topics after being directed not to, ignored the court's instructions to move on, and editorialized about the proceeding. Considering Childress's behavior, which reflected "defiance of, and disdain for, the judiciary," the court did not abuse its discretion when it summarily found her in direct contempt. *Parham*, 60 Va. App. at 459.

The contempt finding did not violate Childress's First Amendment rights. "A lawyer's right to free speech is 'extremely circumscribed' in the courtroom . . . ." *Anthony v. Va. State Bar*, 270 Va. 601, 609 (2005) (quoting *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1071 (1991)). "An attorney may not, by speech or other conduct, resist a ruling of the trial court beyond the point necessary to preserve a claim for appeal." *Gentile*, 501 U.S. at 1071. Restrictions on courtroom speech that ensure the fair and orderly administration of justice extend not only to licensed lawyers but also to self-represented litigants. *See id.* at 1072-73; *see also* Code § 8.01-271.1 (requiring attorneys and *pro se* parties alike to certify that their pleadings and oral representations are not "interposed for any improper purpose"). The "right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with

the relevant rules of procedural and substantive law." *Justus v. Commonwealth*, 222 Va. 667, 680 (1981) (quoting *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975)).

Although Childress characterizes her frequent interruptions as "objections" and "vigorous advocacy" protected by the First Amendment, neither the record nor case law supports that claim. The court repeatedly ordered Childress to focus her questions on relevant matters and respect its rulings. Nevertheless, Childress relentlessly pursued topics irrelevant to Weber's motion to withdraw and defied all orders not to interrupt. Childress's interjections were not designed to "preserve a claim for appeal" but rather to "resist a ruling of the trial court." *Gentile*, 501 U.S. at 1071. Thus, her interjections were not protected speech, and the court did not violate her First Amendment rights when it held her in direct contempt.

Nor did the summary adjudication of direct contempt violate Childress's due process rights under the Fourteenth Amendment. Her contemptuous conduct occurred entirely "in the presence of the court." *Scialdone*, 279 Va. at 442 (quoting *Burdett*, 103 Va. at 845-46). The court convicted her of petty contempt, relying on statutes permitting a maximum of ten days' imprisonment and a fine of $250. *See* Code §§ 18.2-456, -457. Because the court observed the offense, it was authorized to hold her in direct, petty contempt without further proof or evidence. *See Gilman*, 275 Va. at 228 ("Summary adjudications for petty, direct contempt repeatedly have been held to provide due process of law.").

II. Childress's assignments of error concerning the special prosecutor's appointment and the granting of Weber's motion to withdraw are not ripe for consideration.

The "concept of ripeness applies to claims that, while potentially viable at some point in the future, have yet to mature into a justiciable controversy." *Berry v. Bd. of Supervisors*, 302 Va. 114, 131 (2023). An "actual controversy is a prerequisite to a court having authority." *Smith v. Allen Creek Assocs., LLC*, 85 Va. App. 611, 623 (2025) (quoting *Martin v. Garner*, 286 Va. 76, 82 (2013)). A "justiciable controversy 'involves an actual adjudication of rights'

resolving 'specific adverse claims, based upon present, rather than future or speculative facts.'"
*Id.* at 624 (quoting *Highlander v. Va. Dep't of Wildlife Res.*, 84 Va. App. 404, 427 (2025)).
"Without an actual controversy, any opinion rendered by the court is advisory, which the court
lacks jurisdiction to render." *Id.* Whether a justiciable controversy exists is a question of law
that we review de novo on appeal. *See Platt v. Griffith*, 299 Va. 690, 692 (2021) (reviewing the
question of standing, a justiciability question, de novo).

Childress challenges the appointment of Alexander as a special prosecutor in her
underlying criminal case. She asserts that his participation at the hearing "affect[ed] the
legitimacy of the proceeding" and was a structural error that violated her due process rights.
Childress also challenges the court's order allowing Weber to withdraw as counsel. She
contends that the court violated her Sixth and Fourteenth Amendment rights when it granted
Weber's motion without appointing substitute counsel.

Alexander was appointed as a special prosecutor for Childress's underlying criminal
proceedings. But the appeal before us is limited to Childress's conviction for direct contempt.
Alexander's appointment is not a justiciable issue unless or until Childress is convicted on an
underlying charge. Because the issue is not yet ripe, we do not have jurisdiction to consider it.
*See Smith*, 85 Va. App. at 624; *see also Martin*, 286 Va. at 82-84.

Childress's argument about Alexander's participation in her contempt proceeding also
fails. "It has long been established that Virginia courts possess an 'inherent power' to punish for
contempt." *Orndoff*, 304 Va. at 430. With direct contempt, as here, "the court 'is competent . . .
to proceed upon its own knowledge of the facts, and to punish the offender without further proof,
and without issue or trial in any form.'" *Scialdone*, 279 Va. at 443 (alteration in original)
(quoting *Burdett*, 103 Va. at 846); *see also* Code § 18.2-456(A). The court summarily
adjudicated Childress's contempt; Alexander played no part.

Childress contends that the court erred in granting Weber's motion to withdraw as counsel. Here, too, Weber's motion arose from his representation of Childress in her underlying proceedings, not from the finding of contempt. In fact, the court found her in contempt before granting Weber's motion.

Any "aggrieved party" may appeal to this Court from "any final judgment, order, or decree of a circuit court in a civil matter." Code § 17.1-405(A)(3). The only final judgment, order, or decree in the matter at hand is Childress's conviction for summary contempt. Any issues concerning Alexander's appointment and Weber's withdrawal relate to the prosecution of Childress in the underlying cases, rather than the court's summary contempt conviction, and therefore are not ripe for consideration in this appeal.

III. Rule 5A:18 bars Childress's ADA claims.

Childress argues that the court erred when it denied her "explicit requests for reasonable ADA accommodations"—specifically, requests for recesses. However, nothing in the record shows that Childress requested an accommodation under the ADA or that the court ruled on any such request.

Under Rule 5A:18, "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Childress did not invoke the ADA when she asked for recesses or breaks during the proceedings. She never mentioned the ADA at all. Although she said that she was "overwhelmed," she did not cite a disability as the cause. She told the court that she had post-traumatic stress disorder, anxiety, and ADHD. Such conditions qualify as disabilities under the ADA only if they substantially limit one or more major life activities. *See* 42 U.S.C. § 12102(1)(A) (defining "disability" as a "physical or mental impairment that substantially limits one or more major life activities").

Childress offered no evidence or explanation that her claimed conditions constituted a substantial impairment of her activities. *See id.*

Additionally, Childress raised no ADA-specific objections when the court denied her requests for recesses and breaks. "Rule 5A:18 requires a litigant to make timely and specific objections." *Commonwealth v. Carolino*, 303 Va. 399, 409 (2024) (quoting *Brown v. Commonwealth*, 279 Va. 210, 217 (2010)). "Not just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019). "Procedural-default principles require that the argument asserted on appeal be the same as the contemporaneous argument at trial." *Carolino*, 303 Va. at 409 (quoting *Bethea*, 297 Va. at 743); *see also Townes v. Commonwealth*, 234 Va. 307, 319 (1987) (noting that *pro se* parties are bound by procedural rules). Childress did not give the court an opportunity to rule on any ADA claim below, and Rule 5A:18 precludes us from considering the issue for the first time on appeal.

Although Childress asks us to apply the "ends of justice" exception to Rule 5A:18, she has not affirmatively argued that the "exception is necessary to avoid a grave injustice or the denial of essential rights." *Brittle v. Commonwealth*, 54 Va. App. 505, 513 (2009) (quoting *Rowe v. Commonwealth*, 277 Va. 495, 503 (2009)). Rule 5A:18's "'ends of justice exception is narrow and is to be used sparingly,' and [it] applies only in the extraordinary situation where a miscarriage of justice has occurred." *Cornell v. Commonwealth*, 76 Va. App. 17, 31 (2022) (quoting *Conley v. Commonwealth*, 74 Va. App. 658, 682 (2022)). To avail oneself of the exception, "[the appellant] must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." *Holt v. Commonwealth*, 66 Va. App. 199, 210 (2016) (en banc) (alteration in original) (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 221 (1997)). It is never enough for an appellant "to merely assert a winning argument on the

merits—for if that were enough procedural default 'would never apply, except when it does not matter.'" *Winslow v. Commonwealth*, 62 Va. App. 539, 546 (2013) (quoting *Alford v. Commonwealth*, 56 Va. App. 706, 710 (2010)).

The appellant has a "heavy" burden to demonstrate that a miscarriage of justice has occurred. *Holt*, 66 Va. App. at 210 (quoting *Brittle*, 54 Va. App. at 514). Childress has not carried her burden. She has failed to "point . . . to a particular place in the record" affirmatively establishing a manifest injustice or denial of essential rights. *Brittle*, 54 Va. App. at 517.

Because Childress's assignment of error is procedurally defaulted under Rule 5A:18, we cannot address it.

CONCLUSION

For these reasons, we affirm the circuit court's judgment.[3]

*Affirmed.*

---

[3] We deny Childress's motion to supplement the record. An appellate court is "limited to the record of the proceedings which have taken place in the lower court and have been there settled and certified to us." *Haugen v. Shenandoah Valley Dep't of Soc. Servs.*, 274 Va. 27, 39 n.3 (2007) (quoting *Ward v. Charlton*, 177 Va. 101, 107 (1941)). We further note that, in reaching our ruling affirming the judgment below, we considered Childress's final amended brief as the controlling filing and therefore need not address her other pending motions.