# COURT OF APPEALS OF VIRGINIA

## Record No. 2029-24-4

DEBRA DESMORE CORCORAN
v.
COMMONWEALTH OF VIRGINIA

Present: Judges Friedman, Chaney and Duffan

Argued at Fredericksburg, Virginia

Opinion Issued May 19, 2026[*]

## FROM THE CIRCUIT COURT OF PAGE COUNTY
Daryl L. Funk, Judge

David B. Hargett (Hargett Law, PLC, on briefs), for appellant.

Anna M. Hughes, Assistant Attorney General (Jason S. Miyares,[1] Attorney General, on brief), for appellee.

## MEMORANDUM OPINION BY
## <u>JUDGE KEVIN M. DUFFAN</u>

Debra Desmore Corcoran appeals the Page County Circuit Court's order finding her in summary contempt for language included in her Motion to Appoint an Alternate Ex Parte Judge (Motion). The issue on appeal is whether language in an out-of-court filing, if deemed contemptuous, would constitute direct or indirect contempt. Under the present facts, we find that the language in Corcoran's Motion, if contemptuous, would constitute indirect contempt. Therefore, we find that Corcoran was deprived of her constitutional right to a plenary proceeding. Accordingly, we reverse the judgment of the circuit court and remand for a plenary proceeding before a different judge to determine whether Corcoran should be held in contempt.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

Debra Desmore Corcoran was appointed as a special "of counsel" to a criminal defendant in Page County. In July 2024, Corcoran filed an ex parte motion and an amended motion under Code § 19.2-266.4 to obtain expert assistance for her client.[3] On September 4, 2024, Judge Clark A. Ritchie of Page County Circuit Court appointed Judge Daryl L. Funk of Warren County Circuit Court to hear the ex parte motion.

On October 17, 2024, at the start of the hearing on the motion, the circuit judge stated, "[s]o I have a jury unfortunately that's waiting for me, so I would appreciate if we could keep it to whatever you need." Corcoran stated that her purpose in requesting the hearing was to simultaneously apply Code § 19.2-266.4 regarding expert assistance for indigent defendants and Code § 19.2-303.6 regarding deferred dispositions in criminal cases for persons with intellectual disabilities. After an exchange with Corcoran, and unconvinced by her argument, the circuit judge responded, "I'm going to give you time to brief this where you tie all this together in writing." At the conclusion of the proceeding, the circuit judge ordered that Corcoran brief the issue and subsequently set the hearing on it for November 7, 2024.

On October 28, 2024, Corcoran filed a Motion to Appoint an Alternate Ex Parte Judge because "[a] significant conflict exist[ed] with the previously appointed Judge in this matter." The Motion included certain characterizations about the circuit judge, notably that:

---

[2] "[W]e review the facts in the light most favorable to [the Commonwealth], the prevailing party below." *Mintbrook Devs., LLC v. Groundscapes, LLC*, 76 Va. App. 279, 283 (2022).

[3] "Although parts of the record are sealed, this appeal requires unsealing certain portions to resolve the issues raised by [the appellant]. To the extent that certain facts are found in the sealed portions of the record, we unseal those portions only as to those specific facts mentioned in this opinion." *Khine v. Commonwealth*, 75 Va. App. 435, 442 n.1 (2022). "The rest remains sealed." *Id.*

It was initially thought that the [c]ourt had an extraordinary bias against such a Motion, but then it became evident that the [c]ourt had not read the Motion as well.

. . . .

The [c]ourt quickly escalated into a rage, and put Counsel in an untenable and humiliating position, being subjected to a Judge who was yelling, demeaning, insulting, and most importantly, uniformed with an apparent desire to harm and embarrass counsel having the temerity to represent her client.

. . . .

Counsel does not know if the [c]ourt has a medical issue, or if he was governed by some other influence that brought about his behavior, but Counsel knows that the [c]ourt was unfit to be on the Bench on that date.

. . . .

Throughout this incident, Counsel remained polite and attempted to answer questions of the [c]ourt. This appeared to inflame the [c]ourt even further. The [c]ourt ended the hearing telling Counsel she was to write a brief on the matter. *This appeared to be an act of retribution rather than elucidation*. Had Counsel been able to go forward, she would have put on her witnesses and evidence supporting her Motion.

(Emphasis added).

After construing Corcoran's Motion as a motion to recuse, the chief judge of the circuit sent the Motion to Judge Funk. On November 1, 2024, Judge Funk issued a Show Cause Order for Corcoran to appear on November 7, 2024, and show cause as to why she should not be held in summary contempt pursuant to Code § 18.2-456(A)(3) for "vile, contemptuous, or insulting language published of a judge for or in respect of any act or proceeding had, or to be had, in such court, or like language used in his presence and intended for his hearing for or in respect of such act or proceeding." Corcoran appeared at the show cause hearing with counsel.

At the show cause hearing, the circuit judge asked why the court should not find Corcoran in summary contempt. Through counsel, Corcoran argued that if the court was relying

- 3 -

on the language used in her Motion as the basis for finding her in contempt, then she should be found in plenary contempt, because "the words were not uttered in open court." Judge Funk noted that Corcoran also attached the ex parte hearing transcript as part of her Motion. After taking a recess to consider two cases Corcoran submitted in support of her argument, Judge Funk asked her what evidence she would present if the court took the issue to trial. Counsel responded that although she had only come into the case the day prior to the hearing, she would like an opportunity to investigate the incident, and would want to know whether there were witnesses at the ex parte proceeding, whether the courtroom had ambient recording capability, and if the court reporter had a recording of the proceeding. In response to counsel's answer, Judge Funk stated he found that Corcoran "addressed vile, contemptuous, or insulting language of and to a judge . . . or like language used in his presence and intended for his hearing" and "that [Corcoran] filed this motion and committed criminal conduct by all of the following."[4] He then sentenced Corcoran to a $250 fine and any necessary court costs and removed her from representing her criminal client. Judge Funk gave her 21 days to note her objections, make motions to reconsider, and present any other matter that she would find appropriate, and then exited the courtroom, allowing her to note any objections on the record.

On November 21, 2024, Corcoran filed a motion to reconsider contempt finding and motion to stay the contempt order. Judge Funk denied the motion to reconsider on November 25, 2024. On November 26, 2024, new counsel submitted a Special Appearance to Challenge Jurisdiction and motion for stay of judgment on behalf of Corcoran. On December 3, 2024, Judge Funk denied the Special Appearance and the motion for stay of judgment and noted that

---

[4] Judge Funk specifically referenced the aforementioned quotes contained in Corcoran's Motion to Appoint an Alternate Ex Parte Judge when making his ruling.

"[m]ore than [21] days [had] expired since the entry of the [c]ourt's written order finding the Defendant in contempt." Corcoran appealed on December 5, 2024.

ANALYSIS

I. General Contempt Principles

Adjudications of contempt are reviewed for an abuse of discretion. *Petrosinelli v. People for the Ethical Treatment of Animals, Inc.*, 273 Va. 700, 706 (2007). A circuit court "abuses its discretion when it makes an error of law. . . . The abuse-of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." *Porter v. Commonwealth*, 276 Va. 203, 260 (2008) (alteration in original) (quoting *Koon v. United States*, 518 U.S. 81, 100 (1996)). "[A] court's judgment when exercising its contempt power is presumed correct and will not be overturned unless it is clearly erroneous or lacks evidentiary support." *Orndoff v. Commonwealth*, 304 Va. 419, 430 (2025).

Virginia courts recognize that the "power to punish for contempt is inherent in, and as ancient as, courts themselves." *Carter v. Commonwealth*, 2 Va. App. 392, 395 (1986). "All courts in this Commonwealth have the power to impose penalties for contemptuous conduct . . . to preserve the power of the court and to vindicate the court's dignity." *Gilman v. Commonwealth*, 275 Va. 222, 227 (2008). However, the "exercise [of the power of contempt] is a delicate one and care is needed to avoid arbitrary or oppressive conclusions." *Cooke v. United States*, 267 U.S. 517, 539 (1925). Therefore, a court's power to find a person in contempt is limited to "the least possible power adequate to the end proposed." *Harris v. United States*, 382 U.S. 162, 165 (1965).

There are two types of contempt: direct and indirect. *Burdett v. Commonwealth*, 103 Va. 838, 846 (1904). Direct contempt occurs "in the presence of the court," while indirect contempt "occur[s] outside the presence of the court." *Gilman*, 275 Va. at 227 (citing *Davis v.*

*Commonwealth*, 219 Va. 395, 397-98 (1978)). When contempt is direct, "no evidence or further proof is required because the court has observed the offense." *Bell v. Commonwealth*, 81 Va. App. 616, 625-26 (2024) (quoting *Gilman*, 275 Va. at 227-28). "[T]he judge is his own best witness of what occurred." *Id.* at 625 (quoting *Scialdone v. Commonwealth*, 279 Va. 422, 444 (2010)). Therefore, "where the trial court directly observed contemptuous behavior, *summary adjudication* 'provide[s] due process of law.'" *Id.* at 626 (alteration in original) (emphasis added) (quoting *Gilman*, 275 Va. at 228).

Nevertheless, summary contempt "is regarded with disfavor." *Scialdone*, 279 Va. at 443 (quoting *Sacher v. United States*, 343 U.S. 1, 8 (1952)). Decisions from the United States Supreme Court and the Supreme Court of Virginia limit a court's power to summarily punish contempt to instances of direct contempt only. *See In re Oliver*, 333 U.S. 257, 275 (1948); *Cooke*, 267 U.S. at 535-36; *Scialdone*, 279 Va. at 442-44. Summary punishment should be considered a "narrow exception to . . . due process requirements" and should be employed "where immediate punishment is essential to prevent 'demoralization of the court's authority' before the public." *Scialdone*, 279 Va. at 443 (quoting *In re Oliver*, 333 U.S. at 275).

Conversely, indirect contempt occurs when "some essential elements of the offense are not personally observed by the judge, so that he must depend upon statements made by others for his knowledge about these essential elements." *In re Oliver*, 333 U.S. at 275. In these cases, "[d]ue process of law . . . requires that the accused . . . be advised of the charges and have a reasonable opportunity to meet them by way of defense or explanation." *Cooke*, 267 U.S. at 537. This is also known as a plenary proceeding. *Bell*, 81 Va. App. at 626. Due process is necessary because "[p]unishment without issue or trial [is] so contrary to the usual and ordinarily indispensable hearing before judgment . . . that the assumption that the court saw everything that went on in open court [is] required to justify the exception." *Cooke*, 267 U.S. at 536.

In indirect contempt cases, which have been described as "'matters that arise at a distance, and of which the court cannot have so perfect a knowledge,' courts must provide the full panoply of constitutional rights: notice of the charge, right to counsel, presumption of innocence, as well as the opportunity to present evidence and to cross-examine adverse witnesses." *Parham v. Commonwealth*, 60 Va. App. 450, 458 (2012) (quoting 4 William Blackstone, *Commentaries on the Laws of England* *286 (1769)). Put simply, summary adjudication for indirect contempt amounts to a denial of due process. *Bell*, 81 Va. App. at 627 (citing *Scialdone*, 279 Va. at 443-44).

## II. Court Filings as Contempt

The issue on appeal is whether language contained in a court filing alone may form a sufficient basis to find a person in direct criminal contempt pursuant to Code § 18.2-456(A)(3). We find on the facts presented here, it cannot. Because the language in Corcoran's Motion to Appoint an Alternate Ex Parte Judge was the entire basis of her contempt conviction, and because the drafting and filing of that Motion did not take place in open court, there is further "evidence [and] proof . . . required" to determine the nature of her actions. *Bell*, 81 Va. App. at 625 (quoting *Gilman*, 275 Va. at 227). If contemptuous, the contempt was indirect, and therefore Corcoran was entitled to a plenary proceeding.

There is no dispute that the circuit judge's basis for finding Corcoran guilty of criminal contempt was the language contained in her Motion to Appoint an Alternate Ex Parte Judge. His finding was not based on any behavior exhibited or words spoken by her in open court during the ex parte hearing. While it is true that the circuit judge certainly had personal knowledge about the ex parte hearing he conducted, and was therefore the "best witness of what occurred" at the hearing, there is no factual dispute that Corcoran's filing of the Motion—drafting it, printing it, and submitting it—took place outside of open court. *Bell*, 81 Va. App. at 625. As Corcoran's

- 7 -

counsel proffered during questioning by the circuit judge, she would have liked the opportunity to better prepare to defend her client, including the opportunity to investigate the incident, ascertain whether there were witnesses, and whether there was an audio recordation of the ex parte hearing. At this stage, we do not analyze whether Corcoran's defense would have been successful in a hearing for contempt, but rather that she should have been afforded the opportunity to present a defense in the first place.

Furthermore, we emphasize the purpose of summary punishment as "immediate punishment . . . essential to prevent 'demoralization of the court's authority' before the public." *Scialdone*, 279 Va. at 443 (quoting *In re Oliver*, 333 U.S. at 275). With this goal in view, it is important to distinguish that the alleged contemptuous behavior here is not Corcoran's actions at the ex parte hearing, but the Motion she filed in response. Assuming without deciding that the language used in the Motion was contemptuous, it cannot be said that her court filing caused a demoralizing disruption during a live court proceeding. *Parham*, 60 Va. App. at 457 ("Direct contempt usually arises . . . 'by rude and contumelious behavior; by obstinacy, perverseness, or prevarication; by breach of the peace, or any willful disturbance whatever.'" (quoting Blackstone, *supra*, at *285)).

Because potential contemptuous language in an out-of-court filing is properly assessed under indirect contempt, those alleged to have included contemptuous language in such filings are entitled to a plenary proceeding in which due process is applied. *In re Oliver*, 333 U.S. at 275-76 ("If some essential elements of the offense are not personally observed by the judge, so that he must depend upon statements made by others for his knowledge about these essential elements, due process requires . . . that the accused be accorded notice and a fair hearing.").

While it could be argued that the show cause hearing afforded her with these rights, although the circuit judge allowed her to present rudimentary legal authority on why she should

- 8 -

not be held in summary contempt and asked her what evidence she would put on at a possible trial, this fell short of what would have been required under a plenary hearing. Corcoran was not permitted to conduct an investigation, call any witnesses on her behalf, or cross-examine any witnesses presented against her. After presenting his own findings and finding her in summary contempt, the circuit judge denied Corcoran's request to be heard and exited the courtroom, and only then allowed Corcoran to proceed on the record outside of his presence, and after making his decision. This is not tantamount to the process that is due in a plenary proceeding. She should have had the opportunity to be advised of the charges against her, have a reasonable opportunity to present a defense or explanation, have the right to counsel, and the right to testify and call witnesses. *Scialdone*, 279 Va. at 443-44 (citing *In re Oliver*, 333 U.S. at 275-76).

### III. New Judge to Preside Over Further Contempt Proceedings

In a future plenary contempt proceeding regarding Corcoran's written statements, a different judge must preside. Plenary contempt proceedings are unique in that oftentimes the best, if not only witness for the prosecution is the trial judge that presided over the initial proceeding giving rise to the allegation of contempt. "Judges are not prosecutors."[5] *Bell*, 81 Va. App. at 629-30 (citing *United States v. Neal*, 101 F.3d 993, 998 n.4 (4th Cir. 1996)) ("[I]n cases involving indirect contempt, the judge cannot both present the [g]overnment's case and decide the factual and legal issues." (alterations in original)). The United States Supreme Court clarified this principle in *Mayberry*. "[B]y reason of the Due Process Clause of the Fourteenth Amendment a defendant in criminal contempt proceedings should be given a public trial before a judge other than the one reviled by the contemnor." *Mayberry v. Pennsylvania*, 400 U.S. 455, 466 (1971) (citing *In re Oliver*, 333 U.S. 257).

_____

[5] "It is axiomatic that the prosecution of crimes is not a proper exercise of the judicial function." *Bell*, 81 Va. App. at 630 (quoting *United States v. Neal*, 101 F.3d 993, 997 (4th Cir. 1996)).

The language Corcoran used in her Motion accused Judge Funk of being "uninformed with an apparent desire to harm and embarrass counsel" and insinuated that he was suffering from a medical issue or some other influence that rendered him "unfit to be on the Bench on that date." He is clearly the judge being reviled by those words. While it is true that a decision on whether he is so situated that he must recuse from all future proceedings involving Corcoran remains Judge Funk's to make, it is also true that in a trial for contempt, he cannot both present the case against Corcoran as well as decide whether her actions support a finding under the statute. To decide otherwise would run afoul of *Mayberry* and obviate a necessary distinction between a plenary and summary proceeding, forcing the circuit judge to wear two hats simultaneously. It is for these reasons we determine a different judge must preside.[6]

CONCLUSION

Because we find that contemptuous language in an out-of-court filing constitutes indirect contempt, those faced with allegations of contemptuous out-of-court filings are entitled to a plenary proceeding. Therefore, Corcoran should have been afforded her due process rights to a plenary proceeding to determine whether or not the language in her out-of-court Motion was contemptuous. Accordingly, we reverse the circuit court's judgment finding her in summary contempt. Furthermore, we remand this case to a different circuit court judge to hold a plenary proceeding and determine whether the language in her Motion was contemptuous.

*Reversed and remanded.*

---

[6] We do not find that a different judge must preside over "any further proceedings" as requested by Corcoran, but only that a different judge must preside over any further *contempt* proceedings for the reasons stated.